**MISSISSIPPI POWER COMPANY,**
Plaintiff-Appellant,

v.

**Joseph ROUBICEK and Mallory Pierce,
d/b/a Associated Engineers,
Defendants-Appellees.**

No. 71–1881.

United States Court of Appeals,
Fifth Circuit.

June 8, 1972.

Rehearing Denied July 3, 1972.

Ben H. Stone, Eaton A. Lang, Jr., Gulfport, Miss., Eaton, Cottrell, Galloway & Lang, Gulfport, Miss., for plaintiff-appellant.

Arlo Temple, Meridian, Miss., George E. Morse, Gulfport, Miss., Snow, Covington, Temple & Watts, Meridian, Miss., for defendants-appellees.

Before JOHN R. BROWN, Chief Judge, and INGRAHAM and RONEY, Circuit Judges.

JOHN R. BROWN, Chief Judge:

The question presented in this *Erie*[1] controlled diversity case is whether under applicable Mississippi law, a party can be successfully indemnified against loss occasioned by his own negligence under a contract of indemnity which contains no express language to that effect. The District Court, interpreting and applying Mississippi State law within the *Erie*-imposed confines of its *Erie*-created role as merely another Mississippi State Court,[2] holding that since the indemnity provision here in issue did not contain such express language—no specific mention of negligence—indemnification could not be granted, rendered summary judgment in favor of indemnitor, defendant, appellee, Associated Engineers. We reverse.

The facts surrounding the controversy are undisputed and may here be severely capsulated. On September 18, 1967, Associated Engineers and Mississippi Power executed a contract by which Associated agreed to install a carbon dioxide fire extinguishing system in a newly constructed generating unit at the Jack Watson Plant of Mississippi Power in Harrison County, Mississippi. The indemnity provision of the contract—the provision here in issue—in part provided that Associated would indemnify and hold Mississippi Power harmless from "any and all claims of any character * * *" for personal injury or death, "arising out of, related to, or in any way associated or connected with the performance of any work covered by the contract * * *."[3]

On March 12, 1968, an employee of Associated was severely injured by an electrical shock while engaged in the work of installing the extinguishing system in the power generating unit. It is uncontroverted that this work was covered by the installation contract. The employee brought suit against Mississippi Power Company alone, alleging that his injuries were the result of its negligence in failing to provide a safe place for him to work. After a full trial on the merits, the employee was awarded a $250,000 judgment. This judgment, however, was appealed and while pending final disposition before the Mississippi Supreme Court, the case was settled by agreement of the parties for $125,-000.[4]

1. Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

2. Abilene Savings Association v. Westchester Fire Ins. Co., 5 Cir., 1972, 461 F.2d 557; See Cottonwood Mall Shop. Ctr. v. Utah Power Light & Co., 10 Cir., 1971, 440 F.2d 36, cert. denied, 1971, 404 U.S. 857, 92 S.Ct. 107, 30 L.Ed.2d 99; Eastburn v. Ford Motor Co., 5 Cir., 1971, 438 F.2d 125; Greer v. Associated Indemnity Corporation, 5 Cir., 1967, 371 F.2d 29; Ford Motor Co. v. Mathis, 5 Cir., 1963, 322 F.2d 267; Smoot v. State Farm Mutual Automobile Ins. Co., 5 Cir., 1962, 299 F.2d 525; Rutherford v. Ill. Central R.R. Co., 5 Cir., 1960, 276 F.2d 330, 339 (dissenting opinion), cert. denied, 1960, 364 U.S. 922, 81 S.Ct. 288, 5 L.Ed.2d 261. See also Guaranty Trust Co. v. York, 1945, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079.

3. The indemnity provision provides in its entirety:
"47. The Contractor hereby agrees to indemnify and to hold the Purchaser the agents, servants and employees of the Purchaser harmless from any and all claims, damages, suits or actions of any character for damages to property and for injury or death to persons arising out of, related to, or in any way associated or connected with the performance of any work covered by the contract of which this document is a part, or any work on the project to which the contract relates, in whatever manner the same may be caused. The Contractor shall also be responsible for all damage and injury to property of any character during his prosecution of the work and until the contract shall have been completed and the work accepted by the Purchaser which may result from any act, omission, neglect, or misconduct in the manner or method of executing the work or from any failure to perform it satisfactorily or resulting from the non-execution of the work at any time or any defective work or materials."

4. Associated argues that the judgment rendered against Mississippi Power in the State Court provides a conclusive judicial determination on the issue of Mississippi Power's negligence. It further contends that the judgment also provides a complete bar to inquiry into the question of whether its own negligence

Mississippi Power made repeated demands upon Associated to defend the suit and also repeatedly notified Associated that it would seek full indemnification under the indemnity clause of the contract for any losses it sustained as a result of the claim. Associated repeatedly refused to defend, or in any way participate in the suit or settlement negotiations, taking the position it so stringently asserts here, that the indemnity clause required neither the defense of, nor indemnification from, any claim arising from Mississippi Power's negligence. Mississippi Power instituted this action to recover the amount it paid in settlement of the employee's claim and the amount it expended in its defense of the action.

The District Court, concluding that there was no controlling Mississippi pronouncement on this particular issue, determined that in the absence of express, specific language in the indemnity agreement calling for indemnification for the indemnitee's own negligence, such indemnification could not be granted and rendered summary judgment in favor of Associated.

### Blain v. Finley—Our Erie-Bacon

In granting summary judgment in favor of Associated, the Trial Court, in its *Erie*-reading of State law, rejected as dicta and unsound law the Mississippi Supreme Court's recent statement in Blain v. Finley, 1969, 226 So.2d 742.[5] The Mississippi Court there stated:

"The determinative issue in the case at bar revolves around the interpretation and effect to be given to the indemnity provisions of the subcontract

---

contributed to the injury. Although in deciding the case as we have, we find it unnecessary to pass upon Associated's claim regarding the conclusiveness of the judgment on the issue of Mississippi Power's negligence, we are compelled to point out that the judgment could in no way provide an obstacle into further inquiry—if indeed such were needed—into the issue of whether Associated's negligence, if any, contributed to the cause of the injury.

At best, the judgment rendered against Mississippi Power demonstrates only that its negligence was *a* proximate cause of the injuries. See Griffin v. Harkey, Miss.S.Ct., 1968, 215 So.2d 866. Since the employee, as a recipient of Workmen's Compensation benefits could not join his employer (Associated) in the suit, and since under the applicable Mississippi rules of procedure Mississippi Power was unable to implead Associated as a third party defendant, there has clearly been no adjudication on the issue of whether or not Associated's negligence, if any, also constituted *a* proximate cause of the injuries.

5. In rejecting *Blain* as not providing controlling authority, the Court stated:
"This contract in suit was made and to be performed in Mississippi between these parties of diverse residence. The plaintiff relies with confidence on W. E. Blain, et al. v. Sam Finley, Inc. [Miss.], 226 So.2d 742 for its contention

that the motion for a summary judgment is untenable and should be denied. These cases inevitably turn upon the intention of the parties as determined under all circumstances by the particular words employed in the indemnity provisions of their contract. Initially, that claim arose for the death of that employee out of a suit against the prime contractor, and the subcontractor on that job. A recovery was denied on the death claim, and that suit between the two contractors for indemnity involved the question as to the coverage, or not of the indemnity for attorneys' fees where neither defendant was negligent, or responsible for the particular injury. The decision there is not controlling under the facts and circumstances here. The statement of the court as to the rule followed by a majority of the courts as to indemnifying the indemnitee for his own negligence is dicta, and not sound as reasoning or good law and lacks factual support in myriad cases.

The principle involved here is one of sound and controlling public policy. It may well be doubted on good authority that anybody can contract with another not to be responsible in advance for his own negligence. But there may be no doubt if such a provision be valid, that it must be expressly provided for in clear and unmistakable terms (expressly mentioning negligence) that such is the real intention of the parties in a given case."

between Blain and Finley * * *. [S]ome courts have held that in order for an indemnitee to be indemnified against his own negligence, the indemnity contract must contain express language to that effect. However, the better rule and that which is followed by a majority of the courts is that the indemnitee will be indemnified against his own negligence when the contract shows by clear and unequivocal language that this is the intention of the contracting parties * * *.

"By construing all of sections 8 and 12 together, the intention of the contracting parties to indemnify the contractor, Blain, against his own negligent acts is clearly and unequivocally shown." 226 So.2d at 746.

The Court's statement in *Blain* clearly aligns Mississippi with the majority rule and does so in language strikingly similar to that used so recently by the Supreme Court in United States v. Seckinger, 1970, 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224. After recognizing the well settled, almost universally favored rule that such contractual provisions "should not be construed to permit an indemnitee to recover for his own negligence unless the court is firmly convinced that such an interpretation reflects the intention of the parties," 397 U.S. at 211, 90 S.Ct. at 885, 25 L.Ed.2d at 233, the Court went on to state:

"We specifically decline to hold that a clause that is intended to encompass indemnification for the indemnitee's negligence must include an 'indemnify and hold harmless' clause *or that it must explicitly state that indemnification extends to injuries occasioned by the indemnitee's negligence.* * * * Contract interpretation is largely an individualized process, with the conclusion in a particular case turning on the particular language used against the background of other indicia of the parties' intention." 397 U.S. at 212, 90 S.Ct. at 886, 25 L.Ed. 2d at 234, n. 17. (Emphasis added).[6]

Of course *Seckinger* has no force of its own in this *Erie* problem. But it, as did our opinion in it, United States v. Seckinger, 5 Cir., 1969, 408 F.2d 146, 150–151, notes 9 and 10, describes effectively the cleavage in the majority/minority view and the contemporary tendency among the majority courts to read the indemnity language broadly.

The choice between majority/minority is also, of course, one wholly for Mississippi. The choice by a State is one of basic policy, so much so that the imaginary boundary line between contiguous states may mark the selection of one rather than the other. American Agric. Chem. Co., *supra*, 315 F.2d at 862 (concurring opinion). It follows also that what may be ordained as *the* policy may be altered.[7]

So the problem comes down to determining what is the Mississippi rule today. In the role as just another State court, "we must do the best we can util-

---

6. See also American Agric. Chem. Co. v. Tampa Armature Works, Inc., 5 Cir., 1963, 315 F.2d 856; Auto Owner's Mut. Ins. Co. v. Northern Ind. Pub. Serv. Co., 7 Cir., 1969, 414 F.2d 192; Eastern Gas & Fuel Associates v. Midwest-Raleigh, Inc., 4 Cir., 1967, 374 F.2d 451, cert. denied, 1967, 389 U.S. 951, 88 S.Ct. 333, 19 L.Ed.2d 360; Unitec Corp. v. Beatty Safway Scaffold Co., 9 Cir., 1966, 358 F.2d 470. The use of terms "majority" and "minority" often cause confusion and seldom offer any help. Except for those very few jurisdictions which consider indemnification against the indemnitee's negligence as contrary to public policy and therefore void (see United States v. Seckinger, *infra*, 408 F.2d 146 at 150 n.

9, 5 Cir. opinion), most courts allow recovery. Some—fewer in number—require express talismanic words. Some require only general language. (See, e. g., Gulf Oil Corp. v. Atlantic Coast Line R. R., Fla.Dist.Ct.App., 1967, 196 So.2d 456, cert. denied, Fla., 1967, 201 So.2d 893, *quoted in* United States v. Seckinger, *infra*, 408 F.2d at 150 n. 10, 5 Cir. opinion.) Most, rejecting each of these approaches, require only that the intention be expressed in unequivocal language.

7. Thus our pre-Erie holding in Southern Bell Tel. and Tel. Co. v. Mayor and Aldermen of Meridian, 5 Cir., 1935, 74 F.2d 983, falls before *Blain.*

izing all the currents which indicate the way the *Erie* wind blows." Delduca v. United States Fidelity & Guaranty Co., 5 Cir., 1966, 357 F.2d 204, 206. In *Blain* the wind blows briskly with the weather vane pointing clearly.

We decline to credit Associated's argument that the Court's statement in *Blain* should be rejected as dicta. In that case, contractor-indemnitee (Blain) brought suit against subcontractor-indemnitor (Finley) seeking indemnification for expenses, costs and attorneys' fees incurred in his successful defense of a death action brought against both Blain and Finley. The plaintiff in that action alleged that the death had resulted from the negligence of both parties.

The Mississippi Supreme Court, recognizing the general rule that "an indemnitee is entitled to recover, as a part of the damages, reasonable attorneys' fees and reasonable and proper legal costs and expenses which he is compelled to pay as a result of suits by or against him in reference to the matter against which he is indemnified * * *", 226 So.2d at 745 and finding that "the determinative issue in the case" concerned the interpretation of the contract regarding the scope and extent of the indemnity therein provided, 226 So.2d at 746, determined that the broadly phrased agreement *did* provide for indemnification against Blain's negligence even though it did not contain explicit language to that effect. Since the expenses, costs and at-

torneys' fees were incurred in defense of a claim which was covered by the indemnity agreement, the court awarded indemnification for these expenses.[8]

We find in *Blain* clear and controlling authority for our holding in this case. Even assuming that the pertinent statements in *Blain* could be considered dicta —we, of course have concluded to the contrary—they would compel the same result in our *Erie* quest. See Delduca, *supra*; Doucet v. Middleton, 5 Cir., 1964, 328 F.2d 97, 101–102; New York Life Ins. Co. v. Schlatter, 5 Cir., 1953, 203 F.2d 184, 187.

■ Under *Blain* it is clear that in Mississippi, indemnity agreements *can* be interpreted to provide indemnification from loss occasioned by the negligence of the indemnitee, even where no express language to that effect is found in the agreement. Since the Trial Judge quite explicitly rejected what the Mississippi Court stated and then went on in a sort of pre-*Erie* way to determine what was "not sound" (see note 5, *supra*) our differing with this distinguished Mississippi lawyer-judge is not to discount the expertise we accord in matters of local law.

### The Contract

■ The rule here to be applied is whether or not the contract—construed in the light most favorable to the indemnitor (Associated)—clearly and unequi-

8. Associated strongly stresses the fact that Blain was found not to have been negligent in any way, shape or form. It further asserts that the Mississippi Court, in another statement in the opinion, drains any vitality as authority from its earlier pronouncement concerning the construction and interpretation of indemnity agreements. The words so vigorously relied upon by Associated were: "In passing, we direct attention to one additional fact * * * namely, that neither Blain nor Finley was guilty of any negligence * * *. Moreover, the indemnity provisions of the contract in the case at bar specifically refer to the recovery of expenses and attorneys' fees even where the claims are groundless." 226 So.2d at 746. In rejecting Associated's argu-

ment, we need only point out that the Court further stated, "having already concluded that the contract in the present case is broad enough to indemnify Blain against his own negligent acts, we need not consider the fact that the allegations of negligence of Blain, under any circumstances, were totally untenable." *Id.*

These statements, read in context, affirm our conclusion that the key to the case—at least as the Mississippi Court construed it—was whether or not the contract provided for indemnification against the indemnitee's negligence. Concluding that it did, the Court found it unnecessary to discuss the other possible reasons —which it noted only in passing—for arriving at the same result.

vocally evidences the parties' intention that Mississippi Power is to be indemnified against its own negligence. In arriving at our decision, our goal is, of course, to reach that result which would most probably be reached had this action been litigated in the State Court. Cottonwood Mall Shop. Ctr. v. Utah Power & Light Co., *supra*, 440 F.2d at 40. That we might—the word is might—construe this provision more narrowly, absent our *Erie*-shackles, is here of no consequence. "When a state to effectuate what it considers to be good, valid state policies, puts a narrower—or broader—interpretation on language used than might be compelled by our notion of mere literalism * * *" we would decline to say " * * * not only that the result is erroneous, but that in reaching it the court has transgressed the judicial boundary.

"To the contrary, so long as *Erie* stands, for us to say so may itself be 'a dangerous and unwarranted extension of the judicial function,' and especially the function of the national judiciary in this area of diversity federalism." American Agric. Chem. Co., *supra*, 315 F.2d at 863 (concurring opinion).

The contract in *Blain*—strikingly similar to the provision here in controversy—provided for indemnification against loss from all claims "arising out of or in anywise connected with the subcontract work." 226 So.2d at 744. The Mississippi Court construed this provision to be "broad enough to indemnify Blain against his own negligent acts." 226 So.2d at 746. We are compelled to arrive at a similar conclusion regarding the contract provision in this case. As it is undisputed that the injuries of Associated's employee were sustained while he was engaged in work covered by the contract, we find that the provision requires Associated to afford full indemnification to Mississippi Power for the amounts it expended in the defense and settlement of the claim. Mississippi Power need not establish that Associated was negligent. Indeed, once the *Erie* problem of indemnity against the indemnitee's own negligence is out of the way, applying the natural and obvious meaning to the language of the indemnity provision, American Agric. Chem. Co., *supra*, 315 F.2d at 858, by which Associated agreed to indemnify Mississippi Power "from any and all claims, damages, suits or actions of any character for damages to property and for injury or death to persons arising out of, related to, or in any way associated or connected with the performance of any work covered by the contract * * *", we would be hard pressed to arrive at any other interpretation.

As this case involves the isolated legal question of contract interpretation, which we have resolved in favor of Mississippi Power, and since there is a complete absence of controverted issues of fact on liability, the case is indeed ripe for summary judgment, but in favor of, not against, Mississippi Power, see American Agric. Chem. Co., *supra*, 315 F.2d at 860, leaving open on remand only the question of amounts it expended in defense and settlement of the employee's claim.

Reversed and remanded.