Ray D. BROWN and Nancy Jane Brown, Plaintiffs,

v.

SEABOARD COAST LINE RAILROAD COMPANY, Defendant-Appellee,

v.

UNION CAMP CORPORATION, Defendant-Appellant.

No. 75–3884.

United States Court of Appeals, Fifth Circuit.

June 27, 1977.

Rehearing and Rehearing En Banc Denied Aug. 25, 1977.

Edward T. Brennan, Savannah, Ga., for defendant-appellant.

Arnold C. Young, Malcolm R. Maclean, F. Saunders Aldridge, III, Savannah, Ga., for Seaboard Coast Line R.R.

Before WISDOM and GEE, Circuit Judges, and BOOTLE *, District Judge.

BOOTLE, District Judge:

In this diversity action, Union Camp Corporation (Union Camp) appeals the decision of the district court that Union Camp is liable under an indemnity agreement it entered into with Seaboard Railroad Company (Seaboard). The district court held that Seaboard was indemnified against its own negligence. We affirm.

I.

The indemnity provisions in question are part of a railroad switching agreement which fixed the rights and liabilities of Union Camp and several railroads in connection with railroad operations at a Union Camp plant near Savannah, Georgia. The controversy concerning the application of the agreement was precipitated by a crossing accident in which one Ray D. Brown was struck by a Seaboard switch engine operating on Union Camp tracks at the plant site. Brown brought suit in state court and alleged that both Seaboard and Union Camp had negligently caused his injuries.[1] Upon removal of the case to federal court, Seaboard brought a cross-claim against Union Camp asserting that it had promised in the switching agreement "to protect, hold harmless and indemnify (Seaboard) . . . against any and all loss, cost, damage and expense accruing (on) account of any road crossing at grade with tracks of Union Camp." Seaboard further asserted that Union Camp had promised that in the use of the tracks it would assume "all risk of . . . loss or damage : . . caused directly or indirectly or contributed to . . . by the negligence of Union Camp."

The jury returned a verdict on the plaintiff's claim in the form of special interrogatories which apportioned fault for the accident as follows:

| | |
|---|---|
| Plaintiff: | 45% |
| Seaboard: | 40% |
| Union Camp: | 15% |

Because Brown's negligence exceeded that of either defendant, judgment was entered against him. *Wilson v. Harrell,* 87 Ga.App. 793, 799, 75 S.E.2d 436, 442 (1953); *Mishoe v. Davis,* 64 Ga.App. 700, 707–8, 14 S.E.2d 187, 193 (1941). Seaboard then pressed its cross-claim before the court for indemnification as to its cost of the action and attorney's fees, asserting that under the provisions of the indemnity agreement outlined above, it was entitled to compensation for these losses. Union Camp responded that the contract plainly lacked the clear and unequivocal language necessary for indemnification of this nature. The district court ruled, however, that the agreement carried

---

\* Senior District Judge of the Middle District of Georgia sitting by designation.

1. The plaintiff asserted at trial that the negligence on the part of Union Camp was the placing of a small building so near the tracks that it presented an obstruction which blocked the view of crossing vehicles.

the intent that the indemnitee Seaboard would be protected against its negligence and Union Camp now appeals that determination.

## II.

■ This case poses the recurring question whether an indemnity agreement which makes no explicit reference to the indemnitee's negligence can nonetheless suffice to relieve the indemnitee of losses occasioned by its negligence.[2] Georgia follows in this respect the well accepted general rule that indemnity contracts will hold an indemnitee harmless against its own negligence only when the intent to so indemnify is expressed in "plain, clear, and unequivocal terms." *Batson-Cook Co. v. Georgia Marble Setting Co.,* 112 Ga.App. 226, 230, 144 S.E.2d 547, 550 (1965); *Rome Builders Supply v. Rome Kraft Co.,* 104 Ga.App. 488, 489, 122 S.E.2d 133, 134 (1961); *Bohannon v. Southern Ry. Co.,* 97 Ga.App. 849, 850, 104 S.E.2d 603, 605 (1958).[3] Although the intent must be clear, no talismanic language is necessary to precipitate the indemnification of a negligent indemnitee, *see Georgia Ports Authority v. Central of Georgia,* 135 Ga.App. 859, 219 S.E.2d 467 (1975), and in consequence, a court must closely examine the language of a contract in each case to determine whether the parties have shown an obvious intention to protect the indemnitee against loss for its own tortious conduct.[4] Furthermore it is appropriate in construing the contract to consider the circumstances surrounding the entering of the agreement and its overall purpose. *Batson-Cook Co. v. Georgia Marble Setting Co., supra; Louisville & Nashville R.R. Co. v. Atlantic Co.,* 66 Ga.App. 791, 19 S.E.2d 364 (1942).

■ The language of paragraphs 5 and 12, when construed in the light of the purposes of this railroad switching agreement, is sufficiently specific to protect Seaboard from its negligence. That language provides in pertinent part as follows:

5. When deemed necessary by the Plant Switching Railroads, Union Camp will, at its expense, install, maintain and operate such road crossing protection as may be specified and considered necessary by the Plant Switching Railroads at any road crossing at grade over tracks of Union Camp; or, in lieu thereof, protect same with crossing watchman; Union Camp, at all times, to protect, hold harmless and indemnify the Plant Switching Railroads and S&A, collectively and individually, against any and all loss, cost, damage and expense accruing [sic] account of any road crossing at grade with tracks of Union Camp.

12. In the construction, operation, use, repair, alteration or maintenance of the tracks, or any tracks adjacent thereto or connected therewith, covered by this agreement or of the right of way, or any building, structure, equipment or work of

---

**2.** This court has been faced with this identical issue many times. *Steed v. Central of Georgia Ry. Co.,* 529 F.2d 833 (5th Cir. 1976); *United States v. Seckinger,* 408 F.2d 146 (5th Cir. 1969) *rev'd* 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970); *James F. O'Neill Co. v. United States Fidelity and Guar. Co.,* 381 F.2d 783 (5th Cir. 1967); *American Agricultural Chemical Co. v. Tampa Armature Works,* 315 F.2d 856 (5th Cir. 1963); *Jacksonville Terminal Co. v. Railway Express Agency,* 296 F.2d 256 (5th Cir.) *cert. denied* 369 U.S. 860, 82 S.Ct. 949, 8 L.Ed.2d 18 (1962); *Travelers Ins. Co. v. Busy Electric Co.,* 294 F.2d 139 (5th Cir. 1961); *Batson-Cook Co. v. Industrial Steel Erectors, Inc.,* 257 F.2d 410 (5th Cir. 1958).

**3.** *See United States v. Seckinger,* 397 U.S. 203, 211, 90 S.Ct. 880, 25 L.Ed.2d 224, 233 (1970); Annot., 175 A.L.R. 8, 29–38 (1948); 52 C.J.S.

*Indemnity* § 12 (1944). Indemnity agreements usually contain very broad language such as "all risk of loss" and "any and all liability". All-inclusive terms of this nature do not operate to sweep in the negligence of all parties, such as a negligent indemnitee, when the question is whether the right of indemnity exists at all. As Judge Brown stated in *Batson-Cook Co. v. Industrial Steel Erectors,* 257 F.2d 410, 414 (5th Cir. 1958), "(i)t is an area in which to cover *all* does not include one of the parts." (Emphasis original). The problem, of course, is that the all inclusive language is too broad to meet the law's requirement that a negligent indemnitee be protected against its negligence only when the contractual language specifically so provides.

**4.** *See e. g. Jacksonville Terminal Co. v. Railway Express Agency, supra.*

any nature connected in any manner therewith, Union Camp hereby assumes all risk of, and liability for, loss or damage to any property or injury or death to any person, caused directly or indirectly, or contributed to, by the acts, defaults, or negligence of Union Camp, or any agent, employee or representative in its service or under its control, or by defects in trackage owned and maintained by Union Camp. Union Camp will further indemnify and save harmless the Plant Switching Railroads and S&A, or each of them, from all loss, damage and expense growing in any manner out of such acts, defaults or negligence of Union Camp, its agents, employees or representatives in its service or under its control, or in any manner growing out of defects in trackage owned and maintained by Union Camp.

First, paragraph 12 indemnifies the railroad against loss arising from a specific activity, namely, the *use* of the tracks. In the context of a railroad switching agreement in which the primary purpose is to provide for the rights and liabilities of the railroads in their use of the Union Camp tracks, the employment of the phrase "use of the tracks" as an activity from which the railroad will be indemnified is a compelling · indication that the indemnitee will be protected against its negligence.

In *Louisville & Nashville R.R. Co. v. Atlantic Co., supra,* which involved a similar railroad switching agreement, the Georgia Court of Appeals held that the railroad was indemnified against its own negligence because the agreement contained protection against all loss arising from "the operation of locomotives and cars" over the indemnitor's tracks. Despite the lack of an explicit reference to the indemnitee's negligence, the contract's provision for indemnity for loss arising from a specific kind of activity sufficed to show the intention of the parties to indemnify the railroad:

The contract contemplates only the operation, on the defendant's spur track of locomotives or cars by the plaintiffs, and, consequently, the negligence to be indem-

nified against was that of such railroad companies. If they were not to be indemnified for their negligence, it was an idle ceremony in using the words, "or the operation of locomotives or cars thereover" . . ..

*Id.* at 800, 19 S.E.2d at 370.

Similarly, when Union Camp and the switching railroads placed the phrase "use . . . of the tracks" in paragraph 12, this manifested an intent to indemnify the railroads, the parties contractually permitted to use the tracks. *Accord, Cacey v. Virginian Ry. Co.,* 85 F.2d 976 (4th Cir. 1936); *Russell v. Martin,* 88 So.2d 315, 317 (Fla.1956).

Second, the phrase "loss . . . contributed to . . . by the negligence of Union Camp" in paragraph 12 makes clear that the parties contemplated that Union Camp would indemnify the railroad not only for the indemnitor's negligence, but also the negligence of the person who was a tortfeasor in conjunction with Union Camp. The jury determined that Union Camp had indeed "contributed to" the loss in the amount of 15%. This determination in effect triggered Union Camp's obligation to indemnify the railroad for the entire loss, even though the railroad was the other tortfeasor. This conclusion is greatly strengthened, of course, by the earlier conclusion that the phrase "use of the tracks" manifested an intention to protect the railroad from its own negligence.

Finally, paragraph 5, although worded quite differently than paragraph 12, adds further weight to the conclusion that the contract provides for the indemnification of the negligent indemnitee. It contains protection against a specific kind of loss, railroad crossing accidents. While this reference alone may be insufficient to indicate an intention that the railroad be indemnified against those accidents it causes, nonetheless a party likely to be adjudicated as being in some degree at fault in a crossing accident is the railroad. This consideration, when coupled with the language of paragraph 12, buttresses the conclusion that the intent of the parties arising from the en-

tirety of the contract is that Seaboard should be held harmless for its own negligence.

### III.

Union Camp asserts that two other errors require a reversal of the district court. First, Union Camp argues that even if the railroad is indemnified, a judgment imposing liability for damages must first be obtained before the indemnity agreement will provide protection. Since the plaintiff failed to recover anything in this case, Seaboard has supposedly incurred no loss within the meaning of the contract. It is clear that Georgia law does not require that a judgment first be obtained against the indemnitee. In *Robert & Co. Assoc. v. Pinkerton & Laws,* 120 Ga.App. 29, 33, 169 S.E.2d 360, 364 (1969), the indemnitee, suing on an indemnity contract, recovered sums which it had paid out in settlement of a case. Hence, at least with respect to contractual indemnity, a judgment fixing liability is not a prerequisite to recovery on the contract. *Accord, Rite Diet Feeds v. Central of Georgia R.R. Co.,* 136 Ga.App. 14, 16, 220 S.E.2d 22, 24 (1975). Moreover, the railroad switching agreement did not specify the requirement of a judgment as a condition precedent to recovery and thus the right of indemnity exists here without regard to whether a judgment against the railroad was obtained.

Second, in a somewhat related contention, Union Camp argues that the indemnity agreement does not provide for payment of attorney's fees and costs of the action despite the agreement's broad language. Paragraphs 5 and 12 describe the recoverable losses, respectively, as "any and all loss, cost, damage and expense" and "all loss, damage and expense." Unlike the "clear and unequivocal" rule discussed

above which requires great specificity in delimiting the right of indemnity, the rule with respect to the kinds of damages covered by an indemnity agreement is that general, broad words operate to encompass most legitimate expenses. *B & G Electric Co. v. G.E. Bass & Co.,* 252 F.2d 698, 701 (5th Cir. 1958).[5] Thus, once the right of indemnity is established, words such as those appearing in paragraph 5 and 12 are sufficiently broad to encompass attorney's fees and costs of the action. Hence, we must hold against Union Camp on this point as well.

All the other contentions of Union Camp are without merit and do not warrant discussion. Accordingly, the judgment of the district court is AFFIRMED.

---

5. See *e. g., Cormier v. Rowan Drilling Co.,* 549 F.2d 963, 971 (5th Cir. 1977); *Kelloch v. S & H Subwater Salvage, Inc.,* 473 F.2d 767, 771, (5th Cir. 1973); *Mississippi Power Co. v. Roubicek,* 462 F.2d 412, 417 (5th Cir. 1972); *Ruiz v. Shell Oil Co.,* 413 F.2d 310, 314 (5th Cir. 1969); *see generally* 41 Am.Jur.2d, *Indemnity,* § 36, p. 725–26 (1968). Although apparently no Geor-

gia case has ruled on this precise question, it seems quite likely that it would follow the general rule because Georgia courts have previously defined "indemnity" very broadly to mean "reimbursement, restitution, or compensation." *Parker v. Puckett,* 129 Ga.App. 265, 267, 199 S.E.2d 343, 346 (1973).