**SEABOARD COAST LINE RAILROAD COMPANY, Plaintiff-Appellee,**

v.

**UNION CAMP CORPORATION, Defendant-Appellant.**

**No. 79–2381**

**Summary Calendar.\***

United States Court of Appeals, Fifth Circuit.

March 14, 1980.

Rehearing and Rehearing En Banc Denied May 1, 1980.

---

\* Fed.R.App.P. 34(a); 5th Cir. R. 18.

Adams, Adams, Brennan & Gardner, Edward T. Brennan, Savannah, Ga., for defendant-appellant.

Young, Houlihan, MacLean, Exley, Dunn & Connerat, Arnold C. Young, Stanley K. Richards, Savannah, Ga., for plaintiff-appellee.

Before GEE, RUBIN and POLITZ, Circuit Judges.

PER CURIAM:

In 1975 the district court rendered a judgment in a suit involving Seaboard Coast Line Railroad Company (SCL), appellee, and Union Camp Corporation (UC), appellant, interpreting a contract containing two indemnity provisions. The decision was affirmed on appeal, *Brown v. Seaboard Coast Line Railroad Co.*, 554 F.2d 1299 (5th Cir. 1977). Thereafter the parties litigated in Georgia state court. At issue was the same indemnity agreement. *Seaboard Coast Line Railroad Co. v. Union Camp Corp.*, 145 Ga.App. 417, 243 S.E.2d 631 (1978). In the *Brown* decision the district court and this court held that SCL was entitled to indemnification even though it was found to be partially at fault. UC was also found partially at fault. In the *SCL* state court decision, SCL was denied indemnification upon a finding that it was partially at fault and UC was free of fault.

Now on appeal is a permanent injunction entered by the district court enjoining UC from, inter alia, re-litigating or challenging the issues resolved in the *Brown* decision. The injunction specifically addresses two pending state court actions which UC is commanded to retract and withdraw.

The first inquiry is whether the Anti-Injunction Statute, 28 U.S.C. § 2283, denies district court jurisdiction.[1] For the reasons hereafter assigned, we conclude that it does not.

1. That statute provides: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

The second inquiry is whether the *Brown* (federal) and *SCL* (state) decisions are consistent or inconsistent. If they are consistent the injunction is proper. *Southwest Airlines Co. v. Texas International Airlines, Inc.,* 546 F.2d 84 (5th Cir. 1977); *International Association of Machinists & Aerospace Workers v. Nix,* 512 F.2d 125 (5th Cir. 1975); and *Teas v. Twentieth Century-Fox Film Corp.,* 413 F.2d 1263 (5th Cir. 1969). On the other hand, if they are inconsistent—since *Brown* was based on diversity jurisdiction where state substantive law is to be applied—the injunction would not be proper. *Blair v. Commissioner,* 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465 (1937). In short, if the state court decision in *SCL* decided the same legal issue as was presented in *Brown,* this being a diversity jurisdiction matter, the state court decision controls. In that situation the injunction would not be proper.

UC owns a railroad yard which SCL uses pursuant to a contract. The two provisions of that contract which are pertinent to the matter before us are paragraphs five and twelve, which provide:

5. When deemed necessary by the Plant Switching Railroads, Union Camp will, at its expense, install, maintain and operate such road crossing protection as may be specified and considered necessary by the Plant Switching Railroads at any road crossing at grade over tracks of Union Camp; or, in lieu thereof, protect same with crossing watchman; Union Camp, at all times, to protect, hold harmless and indemnify the Plant Switching Railroads and S&A, collectively and individually, against any and all loss, cost, damage and expense accruing [on] account of any road crossing at grade with tracks of Union Camp.

12. In the construction, operation, use, repair, alteration or maintenance of the tracks, or any tracks adjacent thereto or connected therewith, covered by this agreement, or of the right of way, or any building, structure, equipment or work of any nature connected in any manner therewith, Union Camp hereby assumes all risk of, and liability for, loss or damage to any property or injury or death to any person, caused directly or indirectly, or contributed to, by the acts, defaults, or negligence of Union Camp, or any agent, employee or representative in its service or under its control, or by defects in trackage owned and maintained by Union Camp. Union Camp will further indemnify and save harmless the Plant Switching Railroads and S&A, or each of them, from all loss, damage and expense growing in any manner out of such acts, defaults or negligence of Union Camp, its agents, employees or representatives in its service or under its control, or in any manner growing out of defects in trackage owned and maintained by Union Camp.

Paragraph five imposes on UC the responsibility of maintaining the facilities at road crossings and paying for any loss occurring at any road crossing which is at grade with UC's tracks. Paragraph twelve provides that UC will pay for all loss caused or contributed to by UC's negligence.

A brief analysis of *Brown* and *SCL* is in order. In *Brown* the plaintiff was injured at a road crossing and sued UC and SCL. As noted, jurisdiction was based on diversity. SCL cross-claimed against UC. The jury found the plaintiff 45% negligent, SCL 40% negligent and UC 15% negligent. Under Georgia's comparative negligence statute, since his negligence exceeded that of either defendant, the plaintiff was precluded from recovering. SCL pressed its cross-claim for indemnification for attorney's fees and costs. The court quoted paragraphs five and twelve and then parsed the language of twelve and stated:

The jury determined that Union Camp had indeed 'contributed to' the loss in the amount of 15%. *This determination in effect triggered Union Camp's obligation to indemnify the railroad for the entire loss,* even though the railroad was the other tortfeasor. (Emphasis added.)

554 F.2d at 1303.

In *SCL* the plaintiff was injured at a road crossing and sued UC and SCL and

another railroad. The jury found the plaintiff 25% negligent and SCL and the other railroad 75% negligent. UC was found free of negligence. SCL cross-claimed against UC. The trial court denied the cross-claim of SCL. The Court of Appeals of Georgia affirmed, relying on paragraph five, holding that the language was not specific enough to provide SCL with indemnification against losses occasioned by its own negligence.

It is quite obvious here that the language in the indemnity agreement did not excuse the railroads from liability created by their own negligence so as to hold the indemnitor, Union Camp Corporation, liable for the negligence of the railroads.

243 S.E.2d at 633.

The Georgia Court of Appeals made only a passing reference to paragraph twelve, quite understandably so because the jury had found no negligence on the part of UC. As noted, paragraph twelve is keyed to the negligence of UC.

The holding of *SCL* is that paragraph five, standing alone, is insufficient to bind UC to indemnify SCL for losses occasioned by the negligence of SCL. The decision in *Brown* is not inconsistent with that conclusion. In fact we stated as follows as relates to paragraph five:

While this [paragraph five] reference alone may be insufficient to indicate an intention that the railroad be indemnified against those accidents it causes . .

554 F.2d at 1303.

█ The district court concluded that the *Brown* decision and the *SCL* decision were factually distinguishable, the essential difference being that in *Brown* UC was found negligent and in *SCL* UC was found free of negligence. We agree. The two decisions are not irreconcilable. The injunction, accordingly, may properly be entered if otherwise appropriate.

The final inquiry is the propriety of the injunction viewed through the prism of the concepts of collateral estoppel and res judicata. The conclusions of law and expressions by the district judge very succinctly and correctly dispose of this issue. Slightly rearranged and with minimum semantic changes, we adopt them as our own.

"In *Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 973, 974, 59 L.Ed.2d 210 (1979), the Supreme Court stated:

A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a "right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies . . . ." *Southern Pacific R. Co. v. United States*, 168 U.S. 1, 48–49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897). Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. *Cromwell v. County of Sac*, 94 U.S. 351, 352, 24 L.Ed. 195 (1877); *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955); 1B J. Moore, Federal Practice ¶ 0.405[1], at 621–624 (2d ed. 1974); Restatement (Second) of Judgments § 47 (Tent. Draft No. 1, March 28, 1973) (merger); *id.*, § 48 (bar). Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. *Parklane Hosiery v. Shore*, [439] U.S. [322, 326 n. 5], 99 S.Ct. 645, 649 [n. 5], 58 L.Ed.2d [552, 559] n. 5; Scott, Collateral Estoppel by Judgment, 56 Harv.L.Rev. 1, 2–3 (1942); Restatement (Second) of Judgments § 68 (Tent. Draft No. 4, Apr. 15, 1977) (issue preclusion). *Application of both doctrines is central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions. Southern Pacific Railroad, supra*, 168 U.S. at 49, 18 S.Ct. at 27; *Hart Steel Co. v. Railroad Supply Co.*, 244 U.S. 294, 299, 37 S.Ct. 506, 507, 61 L.Ed. 1148 (1917). To preclude parties

from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions. (Emphasis added.)

"In *Southwest Airlines Co. v. Texas International Airlines, Inc., supra,* this court noted:

The principle of res judicata serves several policies important to our judicial system. By declaring an end to litigation, the doctrine adds certainty and stability to social institutions. This certainty in turn generates public respect for the courts. By preventing relitigation of issues, res judicata conserves judicial time and resources. It also supports several private interests, including avoidance of substantial litigation expenses, protection from harassment or coercion by lawsuit, and avoidance of conflicting rights and duties from inconsistent judgments (footnotes omitted).

"Finally, Section 68 of *Restatement of Judgments* 2d, teaches:

Where an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

"The record in this case shows, beyond doubt, that the indemnity provisions of the Joint Switching Agreement were in fact litigated and construed by this court in *Brown.* This construction formed the basis for a *final* judgment. If principles of *res judicata* have any validity, Union Camp should not be permitted to re-litigate the same issues. *Tioga Railroad v. Blossburg & Corning Railroad,* 87 U.S. (20 Wall.) 137, 143, 22 L.Ed. 331 (1873) (re-litigation of a contract construed in a previous case prohibited); *New Orleans v. Citizens Bank,* 167 U.S. 371, 17 S.Ct. 905, 42 L.Ed. 202 (1896)

(where the proper construction of a contract at issue was decided in a former action, that construction would bind the parties in all future disputes). *See International Association of Machinists & Aerospace Workers v. Nix, supra;* 1B Moore's Federal Practice, ¶ 0.401 to ¶ 0.402[1], ¶ 0.405[2], (2d ed. 1974).

"Having determined that the *Brown* decision is *res judicata* as to its construction of the indemnity agreement, this court has 'ancillary power' to protect the integrity of that judgment. *Dugas v. American Surety Co.,* 300 U.S. 414, 57 S.Ct. 515, 81 L.Ed. 720 (1937); *and see Southwest Airlines Co. v. Texas International Airlines, Inc., supra.* Stated another way, the case at bar is 'supplemental' to *Brown, supra. Berman v. Denver Tramway Corp.,* 197 F.2d 946 (10th Cir. 1952). It does not, therefore, run afoul of the Anti-Injunction Statute.

"Nor do principles of federalism proscribe jurisdiction in this case. *See Southwest Airlines Co. v. Texas International Airlines, Inc., supra,* and *International Association of Machinists & Aerospace Workers v. Nix, supra.*"

The permanent injunction entered by the district court is, of course, based upon the decision in *Brown,* which is built upon the cornerstone of negligence on the part of UC. The *Brown* decision collaterally estops[2] the parties involved in that case from challenging the interpretation of the Joint Switching Agreement made therein, in any case involving negligence on the part of UC. Understood in this light and limited to that scope, the injunction does not violate the restrictions of the Anti-Injunction Statute. *See Piambino v. Bailey,* 610 F.2d 1306 (5th Cir. 1980).

For the foregoing reasons the decision of the district court is AFFIRMED.

2. The propriety of the injunction is based on the principle of collateral estoppel, rather than, as the district court indicated, on the related principle of res judicata. *See Montana, supra.*