John R. HUGHES, Bland L. Castano, Erling O. Tronnes, Floyd King, Harry Divestein, Carsten Hjelle, Eddie T. Overton, Robert L. Reynolds, Robert P. Bergh, Samuel Derikrava, Roque P. Navarro, Zenon J. Pinto, Andrew S. Marshall, Ruben Guerra, Feliciano Salcido, Creighton E. Miller, Administrator of the Estates of Pok Tung Lee, William O. Anderson, Allan F. Berlund, Warren J. Henry, Edward T. Kusman, Peter J. Corvia, Leroy L. Mobley, James I. Payne, Robert Cranston, Malcolm Rogers, Lloyd Borland, Lucius McCall, James M. Goo, Alfred W. Franklin, and Frank W. Barber, Appellants,

v.

FOSTER WHEELER CO., Crown Cork & Seal Co., Inc., Garlock, Inc., ACandS, Inc., Mobil Oil Corp., Phillips Petroleum Co., Gatke Corp., Pope & Talbot Co., General Electric Co., Fibreboard Corp., Plibrico Co., Tidewater Oil Co., Texaco Inc., John Cranehoudaille, Inc., United States Steel Corp. a/k/a USX Corp., Owens–Illinois, Inc., Anchor Packing Co., Alaska Steamship Co., and the So–Called "CCR Defendants": A.P. Green Refractories Co., Armstrong World Industries, Inc., Certainteed Corp., Flexitallic, Inc., GAF Corp., National Gypsum Co., U.S. Gypsum Co., and Union Carbide Corp., Appellees.

No. S–6928.

Supreme Court of Alaska.

March 7, 1997.

---

Leonard C. Jaques and Robert J. Allen, The Maritime Asbestosis Legal Clinic, A Division of the Jaques Admiralty Law Firm, Detroit, MI, for Appellants.

Jennifer M. Coughlin, Preston, Gates & Ellis, Anchorage, Jean L. Bertrand, Morgenstein & Jubelirer, San Francisco, CA, Roger Holmes, Biss & Holmes, Anchorage, and Thomas M. Peterson and Michael B. Green, Brobeck, Phleger & Harrison, San Francisco, CA, for Appellees.

Before COMPTON, C.J., and RABINOWITZ and FABE, JJ.

## OPINION

RABINOWITZ, Justice.

### I. INTRODUCTION

Thirty merchant mariners filed complaints against various shipowners and asbestos manufacturers alleging personal injuries and wrongful deaths caused by exposure to asbestos while they served aboard various vessels. The cases were dismissed on grounds of *forum non conveniens*. This is an appeal from the superior court's award of attorney's fees and costs under Alaska Civil Rule 82 entered in conjunction with its *forum non conveniens* dismissal.

### II. FACTS AND PROCEEDINGS

The attorneys for the thirty merchant mariners filed thirty similar complaints in three different superior courts of the State of Alaska, naming multiple defendants. The suits alleged personal injuries and wrongful deaths caused by exposure to asbestos and other substances while the seamen were in the merchant marine. Appellees (Foster) removed twenty-eight of the thirty cases to federal district court, which remanded the cases to state court. On motion of the mariners, the superior court consolidated all thirty cases for the "purposes of hearing [Foster's] motion to dismiss on personal jurisdiction and *forum non conveniens*" grounds.

The superior court granted the motion to dismiss on *forum non conveniens* grounds.[1] The superior court then awarded Foster $134,905.46 in attorney's fees and $106,782.36 in costs,[2] finding Foster the "prevailing party" pursuant to Civil Rule 82. The mariners appeal the superior court's award of attorney's fees and costs.[3]

### III. DISCUSSION

A. *The Superior Court Correctly Applied Civil Rule 82.*

The mariners argue that admiralty law does not provide for awards of attorney's fees and costs, and therefore the superior court erroneously awarded costs and attor-

---

1. The mariners do not appeal this ruling.

2. The superior court excluded from its calculation attorney's fees and costs incurred while the cases were removed to federal court.

3. Subsequent to the filing of this appeal, the mariners sought both a stay of execution and a waiver of the requirement that a bond be posted. The superior court refused to waive the bond requirement. Chief Justice Compton then ordered the superior court to rule on the issue of whether the mariners were indigent. The superior court found that the mariners were, as a class, indigent, and waived the bond requirement.

ney's fees to Foster pursuant to Civil Rule 82.[4]

1. *Since the case was dismissed pursuant to the doctrine of forum non conveniens, any prohibition on the award of attorney's fees pursuant to admiralty law is irrelevant.*

■ These consolidated cases were dismissed pursuant to the doctrine of *forum non conveniens*. The United States Supreme Court recently held that the doctrine of *forum non conveniens* is not a part of admiralty law. *American Dredging Co. v. Miller*, 510 U.S. 443, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994). The court wrote, " [T]he doctrine of *forum non conveniens* neither originated in admiralty nor has exclusive application there. To the contrary, it is and has long been a doctrine of general application." *Id.* at 450, 114 S.Ct. at 987.

Even if the mariners are correct in arguing that cases decided pursuant to federal admiralty law cannot support awards of attorney's fees and costs, that argument is inapplicable to a case resolved by a dismissal pursuant to the doctrine of *forum non conveniens*. Accordingly, we hold that the superior court did not err in finding that attorney's fees and costs could be awarded pursuant to Civil Rule 82.[5]

2. *Admiralty law does not prohibit the superior court from awarding attorney's fees and costs pursuant to Civil Rule 82.*

■ Even assuming that admiralty law applies to an admiralty case dismissed in the superior court pursuant to a *forum non conveniens* motion, admiralty law does not prohibit the award of attorney's fees and costs in

admiralty cases decided in state courts under the savings to suitors jurisdiction.

The United States Constitution provides that the federal judicial power "shall extend ... to all Cases of admiralty and maritime Jurisdiction." U.S. Const., art. III, § 2, cl. 1. However, federal courts do not have exclusive jurisdiction over maritime and admiralty cases. 28 U.S.C. § 1333 provides in part that

[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of:

(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases other remedies to which they are otherwise entitled.

The United States Supreme Court has interpreted this language to allow state courts to entertain admiralty and maritime cases. *See, e.g., American Dredging Co.*, 510 U.S. at 446–47. However state courts may not

"attempt to make changes in the 'substantive maritime law.' " That proviso is violated when the state remedy "works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations."

*Id.* at 447, 114 S.Ct. at 985 (citations omitted).

The mariners make two arguments as to why Alaska Civil Rule 82 would violate "substantive maritime law." First, they claim that, historically, attorney's fees and costs have been prohibited in admiralty cases, and that any award thereof would "work[ ] material prejudice to the characteristic features of the general maritime law." Second, the mar-

---

**4.** The mariners did not argue before the superior court that Civil Rule 82 does not apply to this case. Nonetheless, we have previously stated that "if the alleged error is likely to result in a miscarriage of justice, we will consider such error even though not raised below." *Holiday Inns of America v. Peck*, 520 P.2d 87, 90 (Alaska 1974). Here the mariners would suffer injustice—being forced to pay approximately $250,000—if Rule 82 is inapplicable. Therefore, we will review the decision below for plain error.

Whether the superior court misapplied the applicable law is a question of law. *Harp v. ARCO*

*Alaska, Inc.*, 831 P.2d 352, 356 n. 5 (Alaska 1992). We review questions of law *de novo*. *Langdon v. Champion*, 745 P.2d 1371, 1372 n. 2 (Alaska 1987).

**5.** Our holding that attorney's fees and costs are awardable in conjunction with a *forum non conveniens* dismissal necessarily implies a rejection of the mariners' procedural-substantive reading of *American Dredging Co. v. Miller* and *Exxon Corp. v. Chick Kam Choo*, 817 F.2d 307 (5th Cir.1987). *See infra* at section III.A.2.(b).

iners argue that allowing an award of attorney's fees and costs is an improper intrusion of a state into "substantive maritime law" when viewed from a policy perspective. Specifically they argue that awarding attorney's fees and costs would "interfere[ ] with the proper harmony and uniformity of [admiralty] law in its international and interstate relations[.]"

We note as a preliminary matter that, if the mariners are to prevail, *Williams v. Eckert*, 643 P.2d 991 (Alaska 1982), must be overruled. In *Williams*, we held that federal admiralty law did not prohibit the application of Civil Rule 82 in awarding attorney's fees in admiralty cases heard in our superior courts. We stated:

> Eckert sued in state court to recover his vessel. One of the remedial adjuncts of that suit was the right to recover attorney's fees under Alaska Civil Rule 82, if he prevailed. Congress has not prohibited such an award in state actions arising out of the admiralty jurisdiction of the United States. Moreover, an award of attorney's fees in a state court does not frustrate or displace the essential features of substantive maritime law. It is merely remedial in nature.

*Id.* at 997. The mariners claim that *Williams v. Eckert* conflicts with federal law.

a. *The "American Rule" regarding attorney's fee awards is not "characteristic" of admiralty law.*

■ The mariners claim that federal admiralty law historically has prohibited awards of attorney's fees and therefore the award of attorney's fees was error. We disagree.

The mariners cite no federal statute, but rely on the federal and admiralty common law to support their argument that awards of attorney's fees are prohibited in admiralty cases.[6] None of the cases cited by the mariners are relevant to this case because the cited cases involve situations where federal admiralty law is litigated in federal court. In general, all federal courts (and all state courts with the exception of Alaska) follow the "American rule," pursuant to which neither party is entitled to an award of attorney's fees. *See Home Savings Bank v. Gillam*, 952 F.2d 1152, 1162 (9th Cir.1991) ("Since the Supreme Court's decision in *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), the rule in federal courts has been that, absent an express statutory command, attorney's fees will not be awarded in civil cases.").

The prohibition against awarding attorney's fees in admiralty cases stems not from admiralty law itself, but rather from the fee-shifting rules used in most American courts. In *The Baltimore*, 75 U.S.(8 Wall.) 377, 19 L.Ed. 463 (1869), the United States Supreme Court refused to allow attorney's fees. However, the Court did not rely upon admiralty law, but relied on a generally applicable law passed by Congress in 1853. More recently, in *Vaughan v. Atkinson*, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962), the Court allowed attorney's fees to be awarded in admiralty cases where equity demands it. As equity must be invoked in order to award attorney's fees, the decision implies that attorney's fees may not be awarded in the majority of admiralty cases;[7] however, the

---

6. We have upheld the application of a Congressionally-mandated attorney's fees rule governing a claim based on federal law, even when the federal attorney's fees rule differs from Alaska's Civil Rule 82. *See, e.g., Fairbanks Correctional Center Inmates v. Williamson*, 600 P.2d 743 (Alaska 1979) (holding that federal attorney's fees statute applies to a claim based on 42 U.S.C. § 1983 brought in state court); *Ferdinand v. City of Fairbanks*, 599 P.2d 122 (Alaska 1979) (same).

7. Attorney's fees are awarded in federal admiralty actions for maintenance and cure. In *Royal Caribbean Corp. v. Modesto*, 614 So.2d 517, 520 (Fla.App.1992), the court said:

> [W]e find no conflict between Florida's rules of law regarding offers of judgment and federal maritime law. In federal admiralty actions, an award of attorney's fees as a component of maintenance and cure is traditionally within the equitable jurisdiction of the courts. Awards of attorney's fees made pursuant to Florida law regarding offers of judgment are intended to deter unnecessary litigation and encourage timely settlement of claims.... Because Florida's rules relating to offers of judgment are an integral part of this state's management of its courts' proceedings and do not conflict with federal admiralty law, we reverse the order denying attorney's fees.

case does not state that the prohibition is a part of admiralty law itself.

Finally, the United States Supreme Court discussed the history of fee awards in American law in *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). From the late 1700s until 1800, Congress provided for attorney's fee awards in admiralty cases. *Id.* at 248–49, 95 S.Ct. at 1617–18. In 1853 Congress passed a statute, applicable to all federal litigation, which abolished awards of attorney's fees and costs to the prevailing parties in federal courts. *Id.* at 251–52, 95 S.Ct. at 1618–19. This statute appears to be the basis for the tradition in federal courts prohibiting awards of attorney's fees and costs.

Thus, the mariners correctly argue that attorney's fees historically have been denied in admiralty cases in federal courts. However, this prohibition on attorney's fees results more from coincidence than design. The vast majority of admiralty cases in America have been heard in jurisdictions (usually federal, but sometimes state) that do not provide for awards of attorney's fees to the prevailing party. The mariners have not shown that admiralty law itself prohibits awards of attorney's fees. Therefore, we disagree with the mariners that it is characteristic of admiralty law to prohibit attorney's fees. Rather, it is characteristic of the "American Rule" which predominates in most courts where admiralty cases are tried.

b. *Civil Rule 82 need not yield in order to protect the uniformity required by admiralty law.*

The mariners can prevail if they can show that a prohibition on attorney's fees is necessary to maintain "the proper harmony and uniformity of [admiralty] law in its international and interstate relations." *American Dredging Co.*, 510 U.S. at 447, 114 S.Ct. at 985.

■ The mariners rely on the "reverse-*Erie* doctrine" which the United States Supreme Court has applied when deciding whether to apply state or federal law in admiralty cases. The doctrine "requires that the substantive remedies afforded by the States conform to governing federal maritime standards." *Offshore Logistics Inc. v. Tallentire*, 477 U.S. 207, 223, 106 S.Ct. 2485, 2494, 91 L.Ed.2d 174 (1986). *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), directs federal courts sitting in diversity to apply state substantive law and federal procedures. Conversely, the mariners argue that the "reverse-*Erie* doctrine" directs state courts hearing admiralty cases to apply state procedural law and federal substantive law. The mariners also contend that a regular *Erie* analysis would hold rules regarding awards of attorney's fees to be substantive law. They thus conclude that federal rather than state fee rules should be applied here.

This analysis, however, misconstrues the "reverse-*Erie* doctrine." A post-*Tallentire* case, *Exxon Corp. v. Chick Kam Choo*, 817 F.2d 307 (5th Cir.1987), overruled on other grounds by *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988), contains an instructive discussion of the doctrine. Directly addressing an argument similar to that made by the mariners, the Fifth Circuit stated:

> We reject this facile syllogism; drawing conclusions from metaphors is dangerous. The reason that state court procedures are not preempted by maritime law is that they almost never ... conflict with it. When they do, however, it is clear that they must yield.
>
> . . . .
>
> Because the *Erie* diversity doctrine and the "reverse-*Erie*" maritime doctrine spring from distinct principles and policies, *there is no reason to expect a perfect symmetry between them.* In the *Erie* context, the substance/procedure dichotomy is simply shorthand for distinctions that must be drawn on the basis of policies underlying the doctrine. *The "reverse-Erie" question is whether the inconsistent state law, whether deemed a matter of substance or procedure, conflicts with maritime law.*

*Exxon*, 817 F.2d at 319 (emphasis added, footnotes omitted).

According to the Fifth Circuit, it is irrelevant whether the disputed doctrine is sub-

stantive or procedural. The United States Supreme Court, since *Tallentire,* also has repudiated any suggestion that the relevant analysis·turns solely on whether the disputed doctrine is procedural or substantive. In *American Dredging Co.,* Justice Scalia, writing for the Court, said that states are prohibited from any

> "attempt to make changes in the 'substantive maritime law.'" That proviso is violated when the state remedy "works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations."

510 U.S. at 447, 114 S.Ct. at 985 (citations omitted.) The Court did proceed to discuss whether *forum non conveniens* was a procedural or substantive doctrine; however, the court used the distinction merely as a guide. *Id.* at 453–55, 114 S.Ct. at 988–89. Equally important to the analysis was whether the disputed doctrine is likely to produce "uniform results." *Id.* at 453, 114 S.Ct. at 988. Justice Souter makes this point in his concurrence:

> I join in the opinion of the Court because I agree that in most cases the characterization of a state rule as substantive or procedural will be a sound surrogate for the conclusion that would follow from a more discursive preemption analysis. The distinction between substance and procedure will, however, sometimes be obscure. As to those close cases, how a given rule is characterized for purposes of determining whether federal maritime law pre-empts state law will turn on whether the state rule unduly interferes with the federal interest in maintaining the free flow of maritime commerce.

*Id.* at 457–58, 114 S.Ct. at 990 (Souter, J., concurring).

**8.** Justice Scalia warns that no bright-line rule can be applied:

> It would be idle to pretend that the line separating permissible from impermissible state regulation is readily discernible in our admiralty jurisprudence, or indeed is even entirely consistent within our admiralty jurisprudence.

*American Dredging Co.,* 510 U.S. at 452, 114 S.Ct. at 987–88.

We think the relevant question is whether Alaska's Civil Rule 82 regarding attorney's fees and costs interferes with the uniformity traditionally required in admiralty law. The majority opinion in *American Dredging Co.* articulates that the state law must yield if it "interferes with the proper harmony and uniformity of that law in its international and interstate relations." Elsewhere in its opinion, the Court says that state laws generally must yield when they are unlikely to produce "uniform results." Justice Souter's concurrence phrases the question as "whether the state rule unduly interferes with the federal interest in maintaining the free flow of maritime commerce." [8]

*American Dredging Co.* distinguishes between state laws that influence "primary" behavior and "secondary" behavior of litigants. "Primary behavior" involves out-of-court conduct, or "how to manage their business and what precautions to take." *Id.* at 454, 114 S.Ct. at 989. "Secondary behavior" involves decisions relating to "where to sue or where one is subject to being sued." *Id.* In the majority's view, the doctrine of *forum non conveniens* does not influence either primary or secondary behavior.

Resolution of the *forum non conveniens* issue in any given case is within the discretion of the trial court. As parties cannot predict in advance the trial court's decision, the issue can have little or no influence on secondary behavior.

With respect to primary behavior, it is highly doubtful that parties—either mariners or owners of vessels—will alter their business regimes or take different precautions due to the risk that partial attorney's fees and costs can be awarded in favor of the prevailing party against the losing party. Owners of vessels already have sufficient reason to take precautions to safeguard mari-

A previous United States Supreme Court case stated that state laws may be applied to admiralty law even "when they conflicted with a rule of maritime law which did not require uniformity." *Romero v. Int'l Terminal Operating Co.,* 358 U.S. 354, 374, 79 S.Ct. 468, 481, 3 L.Ed.2d 368 (1959).

ners working on their vessels, since they can and are sued for unseaworthiness, personal injury, wrongful death, and other causes of action when mariners are injured on-board. The fact that Civil Rule 82 would allow a vessel owner, if successful on the merits, to recoup partial attorney's fees and costs is not a sufficient incentive for shipowners to scrimp on safety or change their business management techniques. Similarly, the prospect that mariners might recover partial attorney's fees and costs if they successfully prosecute a suit hardly seems to be sufficient incentive for them to carry out their duties in such a way that would cause them to suffer injury.

The analysis of secondary behavior is more involved. First, Civil Rule 82 will not substantially affect where plaintiffs file suit. In all jurisdictions there is a chance that attorney's fees and costs will be awarded. A plaintiff in an admiralty suit who sues in courts of the State of Alaska knows that there is a probability that partial attorney's fees and costs will be awarded to the defendant if the defendant prevails. A plaintiff who files suit in another jurisdiction (federal or state) knows only that, pursuant to *Vaughan*, there is a possibility that attorney's fees will be awarded in the exercise of the admiralty court's equity power. While the likelihood of a fee award is higher in Alaska than in other jurisdictions, the difference is not so great that it would influence plaintiffs in their decision concerning where to file suit.[9]

Any difference between state and federal law in admiralty cases increases the risk of forum shopping to some degree. Even so, courts have allowed the use of state wrongful death laws in place of generally recognized federal maritime wrongful death law. *Yamaha Motor Corp. v. Calhoun*, —— U.S. ——, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996). Courts also have upheld state laws regarding the partition and sale of ships, the specific performance of arbitration agreements, and the effect of breach of warranty under contracts of maritime insurance. *American Dredging Co.*, 510 U.S. at 452, 114 S.Ct. at 987–88 (quoting *Romero*, 358 U.S. at 373–74, 79 S.Ct. at 480–81). The mere existence of a difference between state and federal law does not dictate that the state law must yield. Here Civil Rule 82 would be more likely to induce forum shopping than any of these rules.

We conclude Civil Rule 82 regarding attorney's fees need not yield to federal law. We therefore reaffirm *Eckert,* and hold that the superior court was correct in applying Civil Rule 82 in conjunction with its dismissal of the mariners' claims on the basis of *forum non conveniens.*

B. *The Superior Court Correctly held that the Defendants Are Prevailing Parties.*

■ The mariners argue that, since the case was dismissed pursuant to the doctrine of *forum non conveniens,* the case was not resolved on the merits, and Foster therefore cannot be the prevailing party within the terms of Civil Rule 82.[10] We recently considered the same argument in *Bromley v. Mitchell,* 902 P.2d 797 (Alaska 1995). We wrote:

> [T]he trial court's award is legally supported by our precedents and logically supported by the fact that Mitchell has obtained a judgment, binding on all Alaska courts, that the claims against him must be resolved in another forum. Under these circumstances, we cannot conclude that the trial court abused its discretion in determining that Mitchell was the prevailing party.

*Id.* at 804. While the mariners ask us to reconsider and overrule *Bromley,* they have not offered any new or persuasive arguments that warrant reversal. The superior court

---

**9.** We note that *Vaughan* only addresses attorney's fees where they are being awarded in favor of the plaintiff, while Rule 82 addresses fees being awarded in favor of *either* the defendant or the plaintiff. However, there is nothing in the reasoning in *Vaughan* that prohibits admiralty courts, using their equity powers, from awarding attorney's fees in favor of defendants should the proper case arise.

**10.** Decisions regarding awards of fees and costs are reviewed for an abuse of discretion. *Stepanov v. Gavrilovich,* 594 P.2d 30, 36 (Alaska 1979).

did not abuse its discretion by determining that Foster is the prevailing party within the terms of Civil Rule 82.

C. *The Superior Court Correctly Determined that the Mariners Are Jointly and Severally Liable for the Attorney's Fees.*

■ In imposing its award of attorney's fees, the superior court wrote:

> Where consolidation was granted at the request of plaintiffs' counsel, and briefing on behalf of the plaintiffs was "global," treating all plaintiffs as one entity, joint and several responsibility for attorney's fees is appropriate.

The mariners argue that the imposition of joint and several liability for the award of attorney's fees and costs is impermissible in Alaska. Specifically, they argue that AS 09.17.080(d) prohibits the imposition of joint and several liability. We disagree.[11]

Alaska Statute 09.17.080(d) states in relevant part:

> The court shall enter judgment against each party liable on the basis of several liability in accordance with that party's percentage of fault.

The statute applies to findings of fault, whereas awards of attorney's fees and costs pursuant to Civil Rule 82 are not indicative of or dependent upon findings of fault. Civil Rule 82(e) states, "In a case in which damages are apportioned among the parties under AS 09.17.080, the fees awarded to the plaintiff under (b)(1) of this rule must also be apportioned among the parties according to their respective percentages of fault." The clear implication is that, in types of litigation where AS 09.17.080 is not invoked, attorney's fees need not be apportioned by fault. Here there were no damages awarded pursuant to 09.17.080, and it follows that the statute is inapplicable to the award of attorney's fees and costs in this case.

Moreover, since the statute's passage in 1987, this court has suggested that awards of attorney's fees and costs for which the non-prevailing parties are jointly and severally liable can stand. In *In re Soldotna Air Crash Litigation,* 835 P.2d 1215, 1223 (Alaska 1992), we discussed our findings in *Stepanov v. Gavrilovich,* 594 P.2d 30 (Alaska 1979):

> [W]e held that when a defendant prevails against multiple defendants who jointly moved for consolidation of their cases, the trial court *could* impose joint and several liability for fees and costs. Such a ruling was within the trial court's discretion.

*In re Soldotna,* 835 P.2d at 1223 (citation omitted). Additionally we said:

> In *McGarvey,* we indicated that the trial courts have great discretion to adapt awards of costs and fees to the unique circumstances of a particular case.

*Id.* In *Moses v. McGarvey,* 614 P.2d 1363 (Alaska 1980), we said:

> In *Stepanov,* the trial court imposed joint and several liability on losing plaintiffs even though they filed separate claims. We affirmed because the same issue was involved in each claim. It was thus within the trial court's discretion to allocate the costs and fees against the losing parties jointly and severally.

*McGarvey,* 614 P.2d at 1367 n. 5.

This reasoning applies to the instant case. "[T]he same issue was involved in each claim," namely, the issue of whether the doctrine of *forum non conveniens* would perhaps further prosecution of the case in the superior court. Therefore, the superior court did not abuse its discretion by holding the mariners jointly and severally liable for the award of attorney's fees. Neither this court's precedents nor AS 09.17.080 mandate a contrary result.[12]

---

**11.** The question of whether a statute is applicable to a given case is a question of law. *Harp v. ARCO Alaska, Inc.,* 831 P.2d 352, 356 n. 5 (Alaska 1992). Therefore, this court reviews the issue on a *de novo* basis.

**12.** The mariners further argue that holding them jointly and severally liable for the award of fees and costs would violate their due process rights, since some plaintiffs would be liable to defendants who were not named in individual suits. The mariners cite a single case in support of their argument, but do not explain how it applies to the present case, nor do they elaborate in any way on this argument. Therefore, the argument is waived for lack of sufficient briefing.

**D.** *The Superior Court Correctly Calculated the Size of the Attorney's Fee Award Pursuant to Civil Rule 82.*

The mariners argue that the award of attorney's fees of $134,905.46 is unwarranted because "merchant seaman [sic] are the wards of the Court, to be treated with great solicitude."[13] They also maintain that the award is too large for them to satisfy without suffering great distress in light of their indigency.

▅▅▅▅▅ An award of attorney's fees will only be reversed for an abuse of discretion, which exists if the award is arbitrary, capricious, manifestly unreasonable, or the result of an improper motive. *Mt. Juneau Enterprises, Inc. v. Juneau Empire*, 891 P.2d 829, 834 (Alaska 1995). The superior court found:

> [T]he appropriate award of attorney's fees in this case is 20% of the actual attorney's fees necessarily incurred, up to $10,000. Pursuant to Civil Rule 82(b)(3), the court sets a limit of $10,000 in fees awarded to each defendant. The court bases its decision on the fact that the case consisted entirely of motion practice. In addition, the complexity of the litigation, the attorney's efforts to minimize fees, and the

equities of the case justify setting a maximum fees award of $10,000. The court does not find the factors in Civil Rule 82(b)(3) A–K applicable to enhance the award above 20%.[14]

The attorney's fees awarded by the superior court were not an abuse of discretion. The superior court set a limit of $10,000 on the amount of attorney's fees awarded per defendant, in effect departing downward from the Rule 82 schedule. The total amount of the award of attorney's fees and costs is reflective of the fact that the thirty mariners elected to sue a total of twenty-six defendants in thirty separate actions. The award was therefore proper.

## IV. CONCLUSION

The superior court's award of attorney's fees and costs is AFFIRMED.

MATTHEWS and EASTAUGH, JJ., not participating.

---

13. The special status of seamen is relevant when they sue their employers; however, here the plaintiffs sued third parties. *Brown v. State*, 816 P.2d 1368, 1371 (Alaska 1991).

14. Civil Rule 82(b)(2) and (3) provide:

(2) In cases in which the prevailing party recovers no money judgment, the court shall award the prevailing party in a case which goes to trial 30 percent of the prevailing party's reasonable actual attorney's fees which were necessarily incurred, and shall award the prevailing party in a case resolved without trial 20 percent of its actual attorney's fees which were necessarily incurred. The actual fees shall include fees for legal work customarily performed by an attorney but which was delegated to and performed by an investigator, paralegal or law clerk.

(3) The court may vary an attorney's fee award calculated under subparagraph (b)(1) or (2) of this rule if, upon consideration of the factors listed below, the court determines a variation is warranted:

(A) the complexity of the litigation;
(B) the length of trial;
(C) the reasonableness of the attorneys' hourly rates and the number of hours expended;

(D) the reasonableness of the number of attorneys used;
(E) the attorneys' efforts to minimize fees;
(F) the reasonableness of the claims and defenses pursued by each side;
(G) vexatious or bad faith conduct;
(H) the relationship between the amount of work performed and the significance of the matters at stake;
(I) the extent to which a given fee award may be so onerous to the non-prevailing party that it would deter similarly situated litigants from the voluntary use of the courts;
(J) the extent to which the fees incurred by the prevailing party suggest that they had been influenced by considerations apart from the case at bar, such as a desire to discourage claims by others against the prevailing party or its insurer; and
(K) other equitable factors deemed relevant.
If the court varies an award, the court shall explain the reasons for the variation.
Civil Rule 79 provides for the taxation of costs in favor of "a party entitled to costs." The prevailing party standard of Civil Rule 82 is used to determine the party entitled to costs.