Almeria **CHRISTIANSEN**, in her capacity as the Administrator of the Estate of Wesley J. Christiansen, and her personal capacity, Appellant,

v.

Kenny **CHRISTIANSEN**, Appellee.

No. S–11789.

Supreme Court of Alaska.

Jan. 26, 2007.

Michael J. Walleri, Law Offices of Michael J. Walleri, Fairbanks, for Appellant.

Laura L. Farley, Farley & Graves, P.C., Anchorage, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

BRYNER, Chief Justice.

## I. INTRODUCTION

After drinking on his cousin Kenny's boat, Wesley Christiansen fell from a dock and

drowned. Wesley's widow, Almeria Christiansen, sued Kenny, arguing that Kenny had a duty to supervise, monitor, and control Wesley's drinking. Almeria acknowledged that Kenny could not be held liable under Alaska's dram shop law, which immunizes social hosts, but argued that he owed Wesley duties under federal maritime law that precluded applying state law. The superior court disagreed and granted Kenny's motion for partial summary judgment. Almeria appeals. Because we conclude that Alaska's social-host immunity provision neither materially prejudices a characteristic feature of maritime law nor interferes with its proper harmony and uniformity, we affirm the superior court's decision.

## II. FACTS AND PROCEEDINGS

Wesley Christiansen arrived at the city dock in Old Harbor, Kodiak, after a day of duck hunting. He brought beer and may have been intoxicated when he arrived. Wesley's cousin Kenny was at the dock, having recently returned from a hunting trip of his own. Kenny was aboard his fishing vessel, the MEKENNA C, socializing with his brother and a few friends. Wesley boarded Kenny's vessel and proceeded to drink while aboard. Some of the alcohol Wesley consumed may have been supplied by Kenny.

Some time later Wesley announced that he had to urinate. One of Kenny's passengers suggested that Wesley could urinate off the end of the dock. Wesley disembarked from the MEKENNA C and was not seen again until his body was discovered floating in the water near the MEKENNA C's starboard side. State troopers later concluded that Wesley had fallen from the end of the dock.

Almeria Christiansen filed a wrongful death suit against Kenny, alleging in part that Kenny had violated duties owed to Wesley imposed by virtue of Kenny's status as owner and captain of the MEKENNA C.

Kenny contested liability and moved for summary judgment on the ground that, as a social host, he owed no legal duty to Wesley under Alaska law.[1] In opposition, Almeria

argued that federal maritime law applied and that it imposed a general duty of "reasonable care" on Kenny, as well as specific duties to ensure passengers a "safe disembarkment" and to "supervise" and "control" their alcohol consumption while aboard his vessel. She acknowledged, though, that under Alaska's dram shop act Kenny owed no duties to Wesley "as a social host."

Superior Court Judge Joel H. Bolger granted partial summary judgment for Kenny, ruling that Alaska law governed the case and that, under Alaska's dram shop act, Kenny had no duty to control Wesley's drinking. The judge also rejected Almeria's claim for negligent disembarkation, noting that Wesley had fallen from the dock, not from Kenny's boat. Judge Bolger nevertheless allowed Almeria's case to proceed on the limited theory that Kenny might have caused the dock to become dangerously icy by operating a bilge pump that coated the dock with mist and ice. Almeria proceeded to a jury trial on this new icy-dock theory.

After being instructed that "[a] person who provides alcoholic beverages to another person is not liable for injuries resulting from that person's intoxication, unless the person who provides the alcohol holds a liquor license," the jury returned a special verdict answering "No" to the question, "Was the defendant Kenny Christiansen negligent?"

Almeria appeals.

## III. DISCUSSION

On appeal, Almeria challenges the superior court's order granting partial summary judgment.[2] Almeria argues that the court should have held that maritime law imposed a duty on Kenny to "monitor," "supervise," and possibly even "control" Wesley's drinking and that the superior court should not have applied Alaska's social-host immunity statute in this case. She claims that the superior court committed reversible error by "erroneously appl[ying] a state law limitation on a federal maritime cause of action."

---

1. See AS 04.21.020.

2. We review awards of summary judgment *de novo. See, e.g., Bennett v. Weimar*, 975 P.2d 691, 694 (Alaska 1999).

▆ In granting Kenny's motion for partial summary judgment, the superior court assumed that the facts of this case triggered admiralty jurisdiction.[3] We follow the same approach here. But the "exercise of admiralty jurisdiction ... does not result in [the] automatic displacement of state law." [4] Admiralty jurisdiction precludes application of state law only when it would work a "material prejudice to the characteristic features of [maritime] law" or would "interfere[ ] with the proper harmony and uniformity of [maritime] law in its international and interstate relations." [5]

▆ The state law at issue here, AS 04.21.020(a), provides that only persons who are licensed to sell alcohol may be held civilly liable for injuries resulting from a recipient's intoxication.[6] By limiting liability to licensed sellers, this provision of Alaska's dram shop act absolves social hosts of civil liability for harm resulting from the intoxication of their guests.[7] In so providing, Alaska's law follows the trend reflected in many state dram shop and civil damages statutes. At common law, dram shop immunity generally extended to commercial providers and social hosts alike.[8] But most states have now narrowed the scope of dram shop immunity by adopting laws that allow commercial providers of alcohol to be held accountable for furnishing liquor to intoxicated persons under certain circumstances, while continuing to hold social hosts immune:

> Generally, [dram shop] statutes only permit a cause of action to be brought against a person or entity who is in the business of providing liquor for commercial remuneration, such as a tavern owner, and not against one who furnishes alcohol as a mere act of hospitality or courtesy.... [C]ivil-damages acts and dram shop statutes generally do not apply to social hosts[.] [9]

To determine whether the superior court could apply Alaska's dram shop act in a case brought under maritime law, the first question we must resolve is whether applying a law of this kind would result in "material prejudice to [any] characteristic feature[ ] of maritime law." [10] United States Supreme Court precedent suggests that a characteristic feature of admiralty law is one that "originated in admiralty" or "has exclusive application there[in]." [11]

Almeria argues that AS 04.21.020's social-host immunity provision violates this test

---

**3.** A tort case falls within admiralty jurisdiction when it satisfies the tests of "location" and "connection" as described by the United States Supreme Court in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995).

**4.** *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 206, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996) (quoting *Jerome B. Grubart, Inc.*, 513 U.S. at 545, 115 S.Ct. 1043) (internal quotation marks omitted).

**5.** *Kodiak Island Borough v. Exxon Corp.*, 991 P.2d 757, 766 (Alaska 1999) (quoting *Hughes v. Foster Wheeler Co.*, 932 P.2d 784, 787 (Alaska 1997)).

**6.** AS 04.21.020, "Civil liability of persons providing alcoholic beverages," provides, in relevant part:

> (a) Except as provided under (b) and (d) of this section, *a person who provides alcoholic beverages to another person may not be held civilly liable for injuries resulting from the intoxication of that person unless the person who provides the alcoholic beverages holds a license* authorized under AS 04.11.080–04.11.220 or is an agent or employee of such a licensee....

(Emphasis added.)

**7.** *See Chokwak v. Worley*, 912 P.2d 1248, 1254 (Alaska 1996) (AS 04.21.020 extends civil immunity to social hosts who provide alcohol to minors); *Mulvihill v. Union Oil Co.*, 859 P.2d 1310, 1311–12 (Alaska 1993) (AS 04.21.020 extended civil immunity to employer acting as social host by providing alcohol to employees at holiday party). *But see Gordon v. Alaska Pacific Bancorporation*, 753 P.2d 721, 723 (Alaska 1988) (claim not barred by AS 04.21.020 where social host should have protected a guest from the harmful presence of other intoxicated party-goers).

**8.** Diane Schmauder Kane, Annotation, *Social Host's Liability for Death or Injuries Incurred by Person to Whom Alcohol was Served*, 54 A.L.R. 5th 313 (1997).

**9.** *Id.*

**10.** *Kodiak Island Borough*, 991 P.2d at 766 (quoting *Hughes*, 932 P.2d at 787).

**11.** *Id.* at 767 (quoting *American Dredging Co. v. Miller*, 510 U.S. 443, 450, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994)).

because federal maritime law imposed a duty on Kenny to "monitor," "supervise," and possibly even "control" Wesley's drinking. In support of this assertion she cites two federal district court cases and one decision by the Fifth Circuit Court of Appeals.[12] But these cases fail to support Almeria's claim. None of them deals with a vessel owner who acted merely as a social host, and none purports to recognize or create a general rule of maritime law that would abrogate the traditional social-host immunity rule as it existed at common law.

■ Given the lack of analogous precedent in maritime law, the superior court found no "controlling federal rule" imposing liability on an unlicensed social host. We agree. In the absence of a controlling federal rule, we conclude that Almeria has not demonstrated that a characteristic feature of maritime law would be materially prejudiced by applying AS 04.21.020 in this case.

We must separately ask whether applying AS 04.21.020's social-host immunity provision would interfere with the "proper harmony and uniformity of maritime law."[13] Almeria maintains that AS 04.21.020 would interfere with the uniform application of maritime law's wrongful death cause of action.[14] Specifically, she asserts that "[w]hile general maritime law does not limit a state from providing for remedies not present in federal maritime law, state law may not impede[ ] remedies created under federal maritime law." Almeria argues that applying AS 04.21.020 in this case would "impose [a] limit[ ] on recovery which would infringe upon the right of recovery created in federal law." Kenny responds that Alaska is free to apply its own law here because there is no "controlling federal law" governing "unlicensed social host[s]."[15]

We have previously noted that "[c]ourts apply a balancing test to decide issues of harmony and uniformity."[16] As one commentator explains,

[S]tate law will not be preempted if the state has a strong interest in the subject matter and there is correspondingly little need for uniformity; if, however, there is a strong federal interest, state law will not be allowed to impair the essential uniformity of maritime law.[17]

---

12. *See Reyes v. Vantage Steamship Co., Inc.*, 558 F.2d 238 (5th Cir.1977) (holding, in a maritime wrongful death action filed after intoxicated crewman jumped from his vessel and drowned while swimming toward a buoy, that vessel owner could be liable for apportioned fault because owner acted "at least negligently" by regularly selling large quantities of alcohol to crewmembers in violation of applicable federal regulations); *Young v. Players Lake Charles, L.L.C.*, 47 F.Supp.2d 832 (S.D.Tex.1999) (denying motion to dismiss under state dram shop immunity provision and holding casino riverboat operator potentially liable under maritime law for damages resulting from drunken driving homicide caused by intoxicated casino patron while driving home after casino served him numerous drinks as inducement to gamble); *Thier v. Lykes Bros., Inc.*, 900 F.Supp. 864 (S.D.Tex.1995) (vessel owner held liable for injuries to seaman cadet caused by cadet's supervising officer, who became intoxicated aboard the vessel while it was in port and recklessly caused an auto accident while driving the cadet to a restaurant).

13. *Kodiak Island Borough*, 991 P.2d at 767 (citation omitted).

14. *See Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811, 820, 121 S.Ct. 1927, 150 L.Ed.2d 34 (2001) ("The maritime cause of action that *Moragne* established for unseaworthiness is equally available for negligence."); *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 409, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970) ("[A]n action does lie under general maritime law for death caused by violation of maritime duties.").

15. *Cf. Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 320–21, 75 S.Ct. 368, 99 L.Ed. 337 (1955) (holding that in the absence of federal legislation or conflicting rule judicially established by federal courts, regulation of marine insurance left to states); Thomas J. Schoenbaum, 1 Admiralty and Maritime Law § 4–3, at 169 (4th ed.2004) (state law may "fill gaps and supplement" the maritime law).

16. *Kodiak Island Borough*, 991 P.2d at 767 (citing *Kossick v. United Fruit Co.*, 365 U.S. 731, 738–42, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961); *Huron Portland Cement Co. v. City of Detroit*, 362 U.S. 440, 442–48, 80 S.Ct. 813, 4 L.Ed.2d 852 (1960); *Just v. Chambers*, 312 U.S. 383, 61 S.Ct. 687, 85 L.Ed. 903 (1941); *Ballard Shipping Co. v. Beach Shellfish*, 32 F.3d 623, 628 (1st Cir. 1994); *Brockington v. Certified Elec. Inc.*, 903 F.2d 1523, 1530 (11th Cir.1990)).

17. Schoenbaum, *supra* note 15, at 169–70 (footnotes omitted).

We are not convinced that applying AS 04.21.020 in this case would impede any strong federal interest. The maritime cause of action for wrongful death advances the federal interest in affording decedents' representatives an avenue for recovery; but beyond establishing the maritime law's interest in ensuring the availability of an action for wrongful death, Almeria identifies no strong federal interest in dictating the precise scope of an actionable wrongful death claim.

■ In fact, as we have already observed, Almeria cites no maritime cases that have imposed social-host liability under circumstances comparable to those at issue here. To be sure, under maritime law vessel owners owe visitors aboard their vessels a general duty of "exercising reasonable care under the circumstances of each case." [18] But given the absence of case law extending this duty to a social-host setting like the one here, we fail to see any "strong federal interest" in demanding a uniform rule that would impose social-host liability; nor do we see any reasonable possibility that Alaska's social-host immunity law might impair the essential uniformity of maritime law.[19]

## IV. CONCLUSION

In summary, because the superior court correctly ruled that AS 04.21.020 could be applied in this case without materially prejudicing a characteristic feature of maritime law or interfering with its proper harmony and uniformity, we AFFIRM the superior court's judgment.

---

**18.** *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 632, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959).

**19.** *Cf. Meyer v. Carnival Cruise Lines,* 1994 WL 832006, at *3–4 (N.D.Cal. Dec.29, 1994) (noting that "extensive research has uncovered no federal maritime dram shop rule" and holding that need for uniformity does not preclude applying California dram shop act in negligence action under maritime law for injuries suffered by cruise ship passenger at sea).