PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT. 28, 2001
THOMAS K. KAHN
CLERK

_____

No. 00-13886
_____

D. C. Docket No. 96-00712-CV-J-21B

NATCO LIMITED PARTNERSHIP,
a limited partnership,

Plaintiff-Counter-Defendant-Appellant,

versus

MORAN TOWING OF FLORIDA, INC.,
a corporation,

Defendant-Cross-Defendant-Counter-Claimant-
Cross- Claimant-Appellee,

M.D. MOODY & SONS, INC., a corporation,

Defendant-Counter-Claimant-Cross-Claimant,

MOBRO MARINE, INC., a corporation,

Defendant-Counter-Claimant-Cross-Claimant-
Cross-Defendant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(September 28, 2001)**

Before BIRCH, WILSON and FARRIS[*], Circuit Judges.

BIRCH, Circuit Judge:

This case requires us to determine whether the language of a contract between Natco Limited Partnership ("Natco") and Moran Towing of Florida, Inc. ("Moran") permits Moran to recover attorneys' fees incurred in a declaratory judgment action brought by Natco against Moran. We find that it does, and accordingly we AFFIRM the district court's award of attorneys' fees to Moran.

## I. BACKGROUND

Natco is engaged in the marine construction and dredging business. Natco contracted with M.D. Moody & Sons, Inc. ("Moody") and Mobro Marine, Inc. ("Mobro") for the lease of a barge-mounted crane to be used in a construction project that Natco had undertaken in New York harbor. The crane was a land-based, 55-ton crawler crane that was to be secured to a barge named the "MOBRO 133." Moody and Mobro's contract with Natco required them to produce the crane and barge in Jacksonville, Florida. Natco entered into a contract with Moran for the towage of the barge from Jacksonville to New York. En route to New York, Moran's tug encountered stormy weather off the North Carolina coast. The crane

---

[*]Honorable Jerome Farris, U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

was lost overboard in the rough seas and the MOBRO 133 suffered minor damage as a result of the crane coming loose.

Natco brought suit in admiralty against Moran, Moody, and Mobro, seeking a declaration of the parties' rights and liabilities under their respective contracts. Moran counterclaimed against Natco for breach of the towage agreement, for attorneys' fees under that contract, and for indemnification or contribution if Moran were found liable to Moody and Mobro. Moody and Mobro also counterclaimed against Natco for breach of contract and collection costs, including attorneys' fees. Moran filed a crossclaim against Moody and Mobro for indemnification or contribution in the event it was found liable to Natco. Finally, Moody and Mobro crossclaimed against Moran for negligence. All of the claims were tried to the district court without a jury except for the crossclaims, which Moran, Moody, and Mobro voluntarily dismissed prior to trial.

The district court found that under the language of Natco's towage contract with Moran[1] and charter contract with Moody and Mobro, Natco had assumed the responsibility between all of the parties to ensure that the crane was properly secured to the MOBRO 133. The district court also found that Natco had failed to

---

[1]The district court found that the towage contract supplied all of the terms of Natco's agreement with Moran.

establish that Moran was negligent in transporting the barge. Accordingly, the district court rendered judgment against Natco on its claims and in favor of Moran, Moody, and Mobro on their counterclaims. The only matters left unresolved by the district court in this initial order were Moran's, Moody's, and Mobro's claims for attorneys' fees; the district court ordered supplemental briefing to resolve these claims. Natco appealed the district court's judgment on liability but settled with Moody and Mobro after noticing the appeal. A panel of this court affirmed the district court's judgment with respect to the issues between Natco and Moran. Natco Ltd. P'ship v. Moran Towing, 239 F.3d 368 (11th Cir. 2000) (table decision).

In its supplemental briefing to the district court, Moran argued that the following two paragraphs from the towage contract between it and Natco entitled it to indemnification for its attorneys' fees:

> 4. SECOND PARTY [NATCO] shall fit out and maintain the tow for the voyage in a proper and sufficient manner in all respects, including, among others, lights, signaling equipment, manning, etc. and shall comply with all requirements of the tow's Underwriters' surveyors, and SECOND PARTY shall indemnify MORAN, the tug and their underwriters against, and hold them harmless from, any and all loss, damage or liability arising out of, or in any way contributed to by, unseaworthiness of the tow, or by any deficiency in, or failure of, its equipment or the personnel on board.
>
> * * *
>
> 12. MORAN shall have all rights at law for the full towing charge and for all additional compensation and charges due it under this Agreement, including cost of recovery of same.

The district court found that under the language of paragraph four, Moran was entitled to recover the attorneys' fees it had incurred in defending the claims brought against it by Natco, in prosecuting its counterclaim against Natco, and in defending against Moody and Mobro's crossclaim, but not for fees incurred in establishing its right to indemnity. Moran submitted a claim for approximately $71,000 in attorneys' fees, but after reviewing the billing records, the district court awarded Moran $53,441. Natco now appeals the district court's interpretation of the indemnity agreement awarding Moran its attorneys' fees; alternatively, Natco contests the amount of attorneys' fees awarded.

## II. DISCUSSION

The prevailing party in an admiralty case is not entitled to recover its attorneys' fees as a matter of course. <u>Noritake Co. v. M/V Hellenic Champion</u>, 627 F.2d 724, 730 (5th Cir. 1980).[2] Attorneys' fees generally are not recoverable in admiralty unless (1) they are provided for by the statute governing the claim, (2) the nonprevailing party acted in bad faith in the course of the litigation, or (3) there is a contract providing for the indemnification of attorneys' fees. <u>Id.</u> at 730, 730-31 n.5. The district court construed the terms of the towage contract to provide for

---

[2]Decisions issued by the Fifth Circuit prior to October 1, 1981 are binding precedent in this circuit. <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

5

Natco's indemnification of Moran's attorneys' fees, a decision that Natco now appeals. We review the district court's construction of the indemnity clause de novo. BankAtlantic v. Blythe Eastman Paine Webber, Inc., 955 F.2d 1467, 1477 (11th Cir. 1992). Our duty is to examine the language of the indemnity provision in an effort to determine how broad of a scope the parties intended the clause to have. Id. "In determining this intent, contract provisions should be given their natural and most commonly understood meaning in light of the subject matter and circumstances, and the language should be read in common with the other provisions of the contract." Id. (quoting Gibbs v. Air Canada, 810 F.2d 1529, 1533 (11th Cir. 1987)).

Natco asserts that the indemnification provision of the towage contract was not intended to cover indemnification for any of the attorneys' fees that the district court awarded to Moran.[3] The parties' use of the phrase "any and all loss, damage or liability" in the indemnity provision, however, is consistent with the language of numerous other indemnification clauses that we have found to encompass attorneys' fees despite the fact that attorneys' fees were not specifically mentioned.

---

[3]Natco also argues that Moran's pretrial pleadings did not properly assert a claim for contractual indemnity for attorneys' fees expended in prosecuting its counterclaim against Natco. Natco provides no citation to case law in support of its argument, and even if we were to find Moran's initial pleadings deficient, any such deficiency was cured in its post-trial submissions. See Signal Oil & Gas Co. v. Barge W-701, 654 F.2d 1164, 1177 (5th Cir. 1981).

See, e.g., Signal Oil, 654 F.2d at 1177-78 (finding attorneys' fees recoverable when indemnity was provided for "loss, cost, damage, expense, claims, actions and liability"); Hobbs v. Teledyne Movible Offshore, Inc., 632 F.2d 1238, 1241 (5th Cir. 1980) (finding attorneys' fees recoverable when indemnity was provided for "loss, expense, claim or demand"); Olsen v. Shell Oil Co., 595 F.2d 1099, 1103 n.5, 1104 (5th Cir. 1979) (finding attorneys' fees recoverable when indemnity was provided for "all claims, demands and causes of action of every kind and character"); Brown v. Seaboard Coast Line R.R. Co., 554 F.2d 1299, 1304 (5th Cir. 1977) (finding attorneys' fees recoverable when indemnity was provided for "any and all loss, cost, damage and expense"); Stephens v. Chevron Oil Co., 517 F.2d 1123, 1124 (5th Cir. 1975) (finding attorneys' fees recoverable when indemnity was provided for "any loss, expense, claim or demand).  Moran's attorneys' fees fall under this contract language because, after excluding Moran's claims for attorneys' fees incurred in establishing its right to indemnity, Moran is seeking to recover its attorneys' fees "not as attorneys' fees qua attorneys' fees, but as part of the reasonable expenses incurred in defending against the claim[s]." Noritake, 627 F.2d at 730-31 n.5.  "[T]he rule with respect to the kinds of damages covered by an indemnity agreement is that general, broad words operate to encompass most legitimate expenses," and it would be unrealistic not to regard the

7

considerable sums Moran spent in attorneys' fees defending these claims and prosecuting its counterclaim as a legitimate "loss." Brown, 544 F.2d at 1304.

While Moran's attorneys' fees constitute "loss," Moran may not seek indemnification from Natco for them under the language of the towage agreement unless the fees are found to be "arising out of, or in any way contributed to by, unseaworthiness of the tow, or by any deficiency in, or failure of, [Natco's] equipment or the personnel on board." Natco urges us to read this provision narrowly, arguing that under the maxim contra proferentum we must construe the language of the contract against Moran because Moran drafted it. "However, [contra proferentum] is something of a fallback canon, and the foremost goal of contract construction is to give effect to the intent of the parties." Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Florida, Inc., 140 F.3d 898, 911 (11th Cir. 1998). The phrase "arising out of, or in any way contributed to" clearly evidences an intent that the indemnification provision be construed broadly.[4]

The district court found that Natco was responsible for securing the crane, and we have previously affirmed this finding. The district court also found that the

---

[4]We note that such broad language is commonly found in indemnification provisions. See, e.g., Hobbs, 632 F.2d at 1240 ("in any way arising out of or connected with"); Olsen, 595 F.2d at 1103 n.5 ("in connection with, or arising out of"); Brown, 554 F.2d at 1301 ("caused directly or indirectly or contributed to by"); Stephens, 517 F.2d at 1124 ("in any way arising out of or connected with").

8

loss of the crane was attributable to a failure of the equipment used to secure the crane to the MOBRO 133, for an inspection after the accident revealed that the wire ropes and turnbuckles used to secure the crane had broken, and several of the pad eyes to which the ropes had been attached were torn through or bent. Natco does not dispute these findings here. Giving the broad terms of the indemnity provision their commonly understood meaning, it is evident that the claims brought by Natco, Moody, and Mobro against Moran for the loss of the crane, and consequently the attorneys' fees spent defending those claims, "arise out of" the failure of equipment for which Natco was responsible, and thus indemnification was proper. Natco claims that Moran's attorneys' fees spent in prosecuting its counterclaim do not arise out of the accident because the claim was one for breach of contract. While Moran's counterclaim is one step further removed in the chain of causation, it nonetheless "arises out of," or at a minimum was "contributed to by," the failure of Natco's equipment, as evidenced by Natco's stance in this litigation that it was not obligated to pay Moran the contractual towage fee because the crane was lost before reaching its destination. Because the causal connection is satisfied, the broad language of the clause indemnifies Moran for the attorneys' fees it spent in prosecuting its counterclaim.

Natco argues that despite the expansive language of the contract, we should, as a matter of policy, construe the language in the indemnity agreement to cover only claims brought by third parties against Moran. Natco's position is that if there is to be indemnification for claims made between two parties to a contract, such intention must be stated expressly to be enforceable. The only case from this circuit that Natco cites for this proposition, however, is BankAtlantic, which imposes no such requirement. In BankAtlantic, Paine Webber sought contractual indemnification from BankAtlantic for attorneys' fees it incurred in litigation with BankAtlantic. BankAtlantic, 955 F.2d at 1477. The indemnity clause in that case did not explicitly provide for indemnification for claims made between BankAtlantic and Paine Webber, but, contrary to Natco's assertions, we did not focus on that fact in rendering our decision. Rather, we examined the entire contract before concluding that certain language requiring Paine Webber to notify BankAtlantic in the event it was sued indicated that the indemnification provision covered only third-party claims against Paine Webber. Id. While we did not find indemnification proper for expenses incurred in litigation between the two parties in BankAtlantic, the reasoning in that case establishes nothing more than that it is the plain language of the contract that governs whether indemnification is proper for claims made between the two parties to a contract. BankAtlantic does not

10

require that we treat indemnification for claims made between the parties differently from claims made by a third party, and we see no reason to do so here.[5]

One situation in which we do require particular language in an indemnification agreement is when the indemnitee is seeking indemnification for its own acts of negligence. We have stated that "contracts will hold an indemnitee harmless against its own negligence only when the intent to so indemnify is expressed in plain, clear, and unequivocal terms." Brown, 554 F.2d at 1302 (internal quotations omitted). Natco argues that Moran is not entitled to recover its attorneys's fees because the contract does not clearly and unequivocally indemnify Moran against its own negligence. While we agree that the language of this contract does not meet the standard set out in Brown, that fact is irrelevant because Moran was ultimately found not to be negligent by the district court, while Natco was the party found to be responsible for the loss of the crane. The indemnity provision here set up a difficult situation in which Natco could not determine its

_____

[5]The thrust of Natco's argument is that indemnity is a concept that generally serves to protect the indemnitee from losses incurred in a lawsuit brought by a third party to the contract. The label "third party" loses some of its meaning here, however, because Natco also assumed the liability of Moody and Mobro, who would have been the typical third parties in this case. Under the language of this indemnity agreement, our focus is on what loss Moran suffered and why it suffered that loss, rather than on what labels are affixed to the parties to the lawsuit. Had the parties wished to limit indemnity to only those claims made by third parties, they could easily have done so. See, e.g., Olsen, 595 F.2d at 1103 n.5 ("harmless from . . . all claims . . . arising in favor of third parties").

obligations to Moran until after the litigation was completed, but "such conflict of interest and hindsight-better-than foresight problems are contractual in nature and are better worked out at the contract negotiating table than by judicial decision." Stephens, 517 F.2d at 1126.

We hold that the district court was correct in interpreting the phrase "any and all loss, damage or liability arising out of, or in any way contributed to by, unseaworthiness of the tow, or by any deficiency in, or failure of, its equipment or the personnel on board" to cover the attorneys' fees Moran spent in defending the claims brought by Natco, Moody, and Mobro and in prosecuting its counterclaim against Natco.

Finally, Natco contests the amount of attorneys' fees that the district court awarded to Moran. We will not overturn the district court's findings on this point unless they constitute an abuse of discretion. Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1340 (11th Cir. 1999). The district court first determined the lodestar figure as it was required to do under Hensley v. Eckerhart, 461 U.S. 424, 433-34, 103 S.Ct. 1933, 1939 (1983). Moran had presented the district court with an hourly rate of $175 per hour for partners and $135 per hour for associates, and the district court accepted these figures as reasonable when Natco did not contest them. The district court then parsed Moran's billing statements, striking all entries

that did not relate primarily to the claims for which it had found indemnity to be proper. The district court disallowed all of Moran's charges for expenses because it found that Moran had not adequately documented the expenses. After arriving at the lodestar figure, the district court then considered the factors listed in <u>Johnson v. Ga. Highway Express, Inc.</u>, 488 F.2d 714, 717-19 (5th Cir. 1974), before deciding that no adjustment to the lodestar was warranted.

The district court's task in this case was complicated by the fact that some of the work done by Moran's lawyers simultaneously served the purpose of both the allowed and disallowed claims. Natco essentially faults the district court for not using the formula Natco proposed for allocating time spent between allowed and disallowed claims. Natco has not shown, however, that the district court's method was contrary to the law of this circuit. The district court carefully examined Moran's billing statements and ultimately disallowed 25% of the amount of fees Moran claimed. Whatever minor faults there may have been in the district court's method for calculating the lodestar amount, we do not find them to rise to the level of an abuse of discretion.

### III. CONCLUSION

In this case, Natco challenged both the district court's decision to award attorneys' fees to Moran under the terms of the indemnity agreement and the amount of fees that the district court awarded. We find that the district court properly found the attorneys' fees Moran expended in defending the claims brought against it by Natco, Moody, and Mobro, and in prosecuting its counterclaim against Natco, to be recoverable as "any and all loss, damage or liability arising out of, or in any way contributed to by, unseaworthiness of the tow, or by any deficiency in, or failure of, [Natco's] equipment or the personnel on board." We also find that the amount of the fees awarded to Moran by the district court did not constitute an abuse of discretion. Accordingly, we AFFIRM the judgment of the district court.