[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 21, 2010
JOHN LEY
ACTING CLERK

No. 09-10083
_____

D. C. Docket No. 04-00146-CV-BAE-4

MISENER MARINE CONSTRUCTION, INC.,

Plaintiff-Counter-Defendant-
Counter-Claimant-Appellee,

versus

NORFOLK DREDGING COMPANY,

Defendant-Counter-Claimant-
Cross-Defendant-Cross-
Claimant-Appellant,

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA,

Defendant-Counter-Defendant-
Appellee,

GENERAL GAS CARRIER CORPORATION,

Defendant-Cross-Claimant-
Cross-Defendant-
Counter-Defendant,

LPG/C STEVEN N,

> Defendant-Cross-Claimant-
> Counter-Defendant,

PCS PHOSPHATE COMPANY, INC.,
PCS NITROGEN FERTILIZER, L.P.,

> Defendants-Counter-Claimants-
> Third-Party Plaintiffs,

GEORGIA PORTS AUTHORITY,

> Third-Party Defendant-
> Counter-Claimant-
> Counter-Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(January 21, 2010)

Before BLACK, WILSON and COX, Circuit Judges.

WILSON, Circuit Judge:

This case concerns whether the prevailing party in a dispute arising from a dredging contract is entitled to collect attorneys' fees. Misener Marine Construction, Inc. subcontracted Norfolk Dredging Company to dredge sections of the Savannah River, a navigable waterway, as part of a larger construction project

2

at the Port of Savannah (the "Port").  After problems at the construction site

Misener sued Norfolk, and Norfolk counterclaimed.  Norfolk prevailed in both

Misener's lawsuit and its counterclaims.  Norfolk contends that it is entitled to

attorneys' fees pursuant to the Georgia Prompt Pay Act ("GPPA").[1]  After reading

the briefs, examining the record, and considering each party's oral argument, we

affirm the order of the district court denying Norfolk recovery of attorneys' fees

under the GPPA.  We hold that the American Rule barring the shifting of

attorneys' fees is a characteristic feature of maritime law,[2] which governs the

interpretation of the contract in this case.  The GPPA is in direct conflict with this

principle of maritime law.  Moreover, Norfolk was free to contract for attorneys'

fees but chose not to.

## I. FACTS AND PROCEDURAL HISTORY

The Port of Savannah is the "fourth-largest container port in the United

States and the largest single-terminal operation in North America."[3]  It is a gateway

---

[1]The GPPA is a chapter of the Georgia Code that regulates construction contracts and payments between contractors and subcontractors. O.C.G.A. § 13-11-1 *et seq*. Section 8 of the GPPA provides for the recovery of attorneys' fees by a prevailing party. O.C.G.A. § 13-11-8 ("In any action to enforce a claim under this chapter, the prevailing party is entitled to recover a reasonable fee for the services of its attorney including but not limited to trial and appeal and arbitration, in an amount to be determined by the court or the arbitrators, as the case may be.").

[2]The terms "maritime law" and "admiralty law" are used interchangeably throughout our opinion.

[3]Georgia Ports Authority, http://www.gaports.com/Default.aspx?tabid=122 (last visited Nov. 24, 2009).

to and from the Atlantic Ocean and serves as "a major distribution hub to and from a 26-state region—fully 75% of the U.S. population."[4]  Misener was contracted by the Georgia Ports Authority to demolish a dock and build a new dock at the Port. As part of this project, Misener subcontracted Norfolk to dredge parts of the Savannah River in the Port.  Norfolk drafted a two-page dredging contract that was subsequently signed by Misener.  The contract did not contain a choice-of-law provision.  And, most importantly, it did not contain a provision providing for attorneys' fees.

Norfolk started the dredging work on March 23, 2004 and completed it within the time specified by the contract.  The area in which Norfolk was dredging was close to two temporary mooring dolphins.[5]  On July 12, 2004 these mooring dolphins pulled partially from the riverbed, causing the vessel the Steven N to release from its secured position.  Misener blamed Norfolk's dredging for the failure and brought suit in the Southern District of Georgia for negligence, breach of the dredging contract, and breach of warranty.

Misener's complaint stated that the lawsuit was filed pursuant to the district

---

[4]Savannah Economic Development Authority, http://seda.org (follow "Industries & Companies" hyperlink; then follow "Port Related/ Distribution" hyperlink) (last visited Nov. 24, 2009)

[5]Mooring dolphins are man-made structures that rise above the water and are used for various purposes such as securing vessels, supporting warning signs, or protecting nearby piers.

court's maritime jurisdiction.  Norfolk answered Misener's complaint and counterclaimed for payment for the dredging work, interest, and attorneys' fees pursuant to the GPPA.  In pleading its counterclaim Norfolk stated that the district court had jurisdiction, but did not explicitly state the basis for jurisdiction.[6]

Upon further investigation into the failure of the mooring dolphins, Misener determined that Norfolk was not responsible.  Misener filed a voluntary dismissal of its claim against Norfolk on October 6, 2005.  Norfolk moved for summary judgment on its claim for payment, interest, and attorneys' fees on November 8, 2005.

On January 6, 2006, the district court entered summary judgment for Norfolk, granting Norfolk attorneys' fees pursuant to the GPPA, and reserving ruling on the amount of attorneys' fees to be awarded.  The summary judgment order held that this Court's precedent allowed state laws dealing with attorneys' fees to supplement maritime law.[7]  The district court judge ruled that there is not an

[6]Norfolk asserts on appeal that it filed its counterclaim under diversity jurisdiction, but the only indication of this is paragraphs two, three, and four of Norfolk's Counterclaim section of its Amended Answer, wherein it states the principal place of business of each party to the action.

[7]The order cited three opinions to support this proposition: *All Underwriters v. Weisberg*, 222 F.3d 1309, 1313–15 (11th Cir. 2000) (in matters of maritime insurance, state law controls, and so prevailing party was allowed to recover attorneys' fees under state statute); *Coastal Fuels Mktg., Inc. v. Fla. Express Shipping Co.*, 207 F.3d 1247, 1251–52 (11th Cir. 2000) (prevailing party in maritime insurance dispute was allowed to recover attorneys' fees where provision for recovery of attorneys' fees was included in the contract); and *United States ex. rel. Garrett v. Midwest Constr. Co.*, 619 F.2d 349, 353 (5th Cir. 1980) (prevailing party in a dredging dispute

established federal rule regarding attorneys' fees in maritime cases, and attorneys' fees is not the type of issue that requires a uniform national rule. Thus, the recovery of attorneys' fees under the GPPA was not inconsistent with maritime law, and the GPPA should supplement maritime law. The district court judge passed away prior to issuing a ruling setting the amount of attorneys' fees.

A new district court judge was subsequently assigned to the case. In determining the amount of attorneys' fees Norfolk was entitled to recover, the new judge found that the GPPA conflicted with a general principle of maritime law, that each party bears its own attorneys' fees. The district court entered an order denying Norfolk attorneys' fees under the GPPA. Norfolk appeals this order.[8]

## II. STANDARD OF REVIEW

We review the district court's application of maritime law *de novo*. *All Underwriters v. Weisberg*, 222 F.3d 1309, 1310 (11th Cir. 2000) (citation omitted).

## III. DISCUSSION

Norfolk presents several arguments all aimed at recovery of attorneys' fees pursuant to the GPPA. First, Norfolk argues that this case arises under diversity jurisdiction and Georgia law, i.e. the GPPA, should apply. The dredging contract

---

was allowed to collect attorneys' fees pursuant to a state statute). As we discuss later, the initial district court order and Norfolk have misconstrued these holdings in such a way as to incorrectly interpret our precedent.

[8]We have jurisdiction over final orders of the district courts pursuant to 28 U.S.C. § 1291.

6

at issue, however, makes this case one of maritime jurisdiction and thus the district court properly applied substantive maritime law. Second, Norfolk contends that our precedent supports the application of the GPPA to dredging cases. This argument is based on a misinterpretation of our precedent and has no merit. Third, Norfolk argues that the GPPA can supplement substantive maritime law because the bar against shifting attorneys' fees is not a characteristic feature of maritime law and the GPPA will not contravene the uniformity interests of maritime law. We find the rule that each party generally bears its own attorneys' fees is a characteristic feature of maritime law. The GPPA would directly contravene this established rule of maritime law. Further, a clearly established exception exists wherein Norfolk was free to contract for the indemnification of attorneys' fees. Norfolk chose not to include such a provision in the contract and we will not give Norfolk a second bite at the apple by way of the GPPA.

A.      *Substantive Maritime Law Controls This Case*

The federal courts have primary jurisdiction of maritime issues.[9] To determine whether a contract falls within maritime jurisdiction we look to "the

_____

[9]"The judicial Power shall extend to all Cases . . . of admiralty and maritime Jurisdiction." U.S. Const. art. III, § 2, cl. 1. Congress codified this Constitutional grant of jurisdiction as follows: "The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333.

7

subject-matter, the nature and character of the contract . . . the true criterion being the nature of the contract, as to whether it have reference to maritime service or maritime transactions." *N. Pac. S.S. Co. v. Hall Bros. Marine Ry. & Shipbuilding Co.*, 249 U.S. 119, 125, 39 S. Ct. 221, 223 (1919). In *Hall Brothers* the Supreme Court held that an agreement to repair a ship, even though on a dry dock, was a maritime contract. *Id.* at 129, 39 S. Ct. at 224. "In sum, we look to whether the substance of the contract at issue in the dispute—without regard to the identity of the parties—is reasonably necessary to the conduct of maritime commerce." *Ambassador Factors v. Rhein-, Maas-, und See-Schiffahrtskontor GmbH*, 105 F.3d 1397, 1399 (11th Cir. 1997) (footnote omitted).

The primary objective of the contract between Norfolk and Misener was dredging a navigable waterway in a port that services international and national commerce. There is no doubt that the work contracted for and performed by Norfolk had a direct effect on maritime services and commerce. Further, the Supreme Court has previously held that dredging is traditionally a maritime activity.[10] Norfolk's dredging contract, and the dispute arising therefrom, falls

_____

[10]*See Stewart v. Dutra Constr. Co.*, 543 U.S. 481, 495–97, 125 S. Ct. 1118, 1127–29 (2005) (dredge was a vessel and thus fell under the Longshore and Harbor Workers' Compensation Act, a maritime statute); *Ellis v. United States*, 206 U.S. 246, 259, 27 S. Ct. 600, 603 (1907) (citation omitted) (dredges are vessels and fall "within the admiralty jurisdiction of the United States"); *see generally Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 540, 115 S. Ct. 1043, 1051 (1995) (lawsuit concerning a fixed barge on the Chicago River fell under maritime jurisdiction because "repair or maintenance work on a

8

within the federal courts' maritime jurisdiction.[11]

"With admiralty jurisdiction comes the application of substantive admiralty law." *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864, 106 S. Ct. 2295, 2298–99 (1986). "Drawn from state and federal sources, the general maritime law is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." *Id.* at 864–865, 106 S. Ct. at 2299 (footnote omitted). While Congress is empowered to pass laws regarding maritime activities, a large part of the body of substantive maritime law has arisen from common law principles of the Supreme Court. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 314, 75 S. Ct. 368, 370 (1955). "And States can no more override such judicial rules validly fashioned than they can override Acts of Congress." *Id*.

B.    *Maritime Law Generally Requires That Each Party Bear Its Own Attorneys' Fees*

The law in this Circuit regarding attorneys' fees in maritime disputes is

---

navigable waterway performed from a vessel" was substantially related to traditional maritime activity).

[11]Norfolk has argued that they pleaded diversity jurisdiction in their counterclaim, thus Georgia law and the GPPA should apply. Even if this case were filed under diversity, substantive maritime law would still apply. *See Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 411, 74 S. Ct. 202, 206 (1953) (finding that substantive maritime law applied in a maritime tort even though the suit was filed under diversity jurisdiction). "[T]he substantial rights of an injured person are not to be determined differently whether his case is labelled 'law side' or 'admiralty side' on a district court's docket." *Id.*

clear.[12]  "The prevailing party in an admiralty case is not entitled to recover its

attorneys' fees as a matter of course."  *Natco Ltd. P'ship v. Moran Towing of Fla.,*

*Inc.*, 267 F.3d 1190, 1193 (11th Cir. 2001) (citing *Noritake Co., Inc. v. M/V*

*Hellenic Champion*, 627 F.2d 724, 730 (5th Cir. 1980) ("Absent some statutory

authorization, the prevailing party in an admiralty case is generally not entitled to

an award for attorneys' fees.")); *see also Coastal Fuels Mktg., Inc. v. Fla. Express*

*Shipping Co.*, 207 F.3d 1247, 1250 (11th Cir. 2000) ("A party is not entitled to

attorney's fees in an admiralty case unless fees are statutorily or contractually

authorized.").  There are exceptions to the general rule precluding recovery of

attorneys' fees.  *See Natco*, 267 F.3d at 1196 (attorneys' fees were properly

awarded in a maritime case where a specific contractual provision was interpreted

to provide the recovery of attorneys' fees).  Attorneys' fees will be awarded to the

prevailing party in maritime cases if: "(1) they are provided by the statute

governing the claim, (2) the nonprevailing party acted in bad faith in the course of

the litigation, or (3) there is a contract providing for the indemnification of

---

[12]Norfolk futilely cites *United States ex. rel. Garrett v. Midwest Construction Co.*, 619 F.2d 349, 353–54 (5th Cir. 1980).  (Decisions issued by the Fifth Circuit prior to October 1, 1981 are binding precedent in this Circuit.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).)  *Garrett* applied a state attorneys' fees statute to a dispute arising from a dredging contract.  *Garrett*, however, was decided under diversity jurisdiction, rather than maritime jurisdiction, and the opinion made no mention of substantive maritime law.  *Garrett* did not address the issue presented to us in this case, namely whether a state statute providing for the recovery of attorneys' fees is applicable in a dispute arising under maritime law.  Thus, *Garrett* provides no guidance to the conclusion we reach in this case.

attorneys' fees." *Id.* at 1193. Absent one of these exceptions, this Court will not award the prevailing party attorneys' fees.[13]

Norfolk asserts that the first exception applies because the GPPA, a state statute, is the "statute governing the claim." We find no merit to this interpretation. Logic and a proper reading of case law demand limiting "statutes governing the claim" to federal statutes.[14] Since the GPPA is not a federal statute it does not fall within this exception. Norfolk has not claimed that they are entitled to attorneys' fees as a result of any bad faith on the part of Misener, so we will not consider the second exception.

The dredging contract did not contain a provision providing for the indemnification of attorneys' fees. Norfolk was a sophisticated party who was, or should have been, well aware of the law of our Circuit concerning attorneys' fees

---

[13]Our decision in *All Underwriters v. Weisberg*, 222 F.3d 1309 (11th Cir. 2000), does not conflict with the rule that each party generally bears its own attorneys' fees. *Weisberg* awarded attorneys' fees to the prevailing party in a maritime insurance dispute pursuant to a state statute. 222 F.3d at 1315. However, the ruling in *Weisberg* followed the precedent of *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 316–17, 75 S. Ct. 368, 371–72 (1955), wherein the Supreme Court ruled that states have a strong interest in the regulation of insurance, including maritime insurance. *Weisberg* did not establish a precedent that attorneys' fees are generally recoverable in maritime disputes. 222 F.3d at 1313–15. The determinative issue in *Weisberg* was insurance, not attorneys' fees. *Id.*

[14]*See Noritake Co., Inc. v. M/V Hellenic Champion*, 627 F.2d 724, 730 (5th Cir. 1980) (in outlining the exception for fees awarded by statute, stating "[n]or is there any other *federal* statutory authorization for the award of attorneys' fees") (emphasis added).

11

in maritime cases. Furthermore, Norfolk drafted the contract.[15] In conclusion, the

general rule that each party bear its own attorneys' fees in maritime contract

disputes was well established at the time that Norfolk entered into the contract.

*See Natco*, 267 F.3d at 1193. The contract exception was also well established.

*See id*. Norfolk was free to contract for the indemnification of attorneys' fees, but

chose not to. The GPPA will not serve as an escape clause for Norfolk when the

legal framework for the shifting of attorneys' fees was clear prior to Norfolk's

drafting of the contract.

C.      *The GPPA Cannot Supplement Substantive Maritime Law*

In the alternative, Norfolk asks this Court to incorporate the GPPA into

substantive maritime law. "[W]hen neither statutory nor judicially created

maritime principles provide an answer to a specific legal question, courts may

apply state law provided that the application of state law does not frustrate national

interests in having uniformity in admiralty law." *Coastal Fuels*, 207 F.3d at 1251.

State law may be applied to issues of a maritime nature if: (1) there is not an act of

Congress that speaks to the issue; (2) the state law does not contravene a

characteristic feature of the general maritime law; and (3) the state law does not

---

[15]"The traditional rule of construction in admiralty cases is to 'construe the contract language most strongly against the drafter.'" *Edward Leasing Corp. v. Uhlig & Assocs., Inc.*, 785 F.2d 877, 889 (11th Cir. 1986) (citation omitted).

interfere with the proper harmony and uniformity of maritime law. *S. Pac. Co. v.*

*Jensen,* 244 U.S. 205, 216, 37 S. Ct. 524, 529 (1917), *superseded by statute*,

Longshoremen's and Harbor Workers' Compensation Act, ch. 509, 44 Stat. 1424

(1927) (codified as amended at, 33 U.S.C. § 901 *et seq.*).[16] Congress has not

spoken directly on the subject of whether a prevailing party is or is not entitled to

collect attorneys' fees in a dredging dispute. That leaves us to determine whether

the shifting of attorneys' fees "is either a 'characteristic feature' of admiralty or a

doctrine whose uniform application is necessary to maintain the 'proper harmony'

of maritime law." *Am. Dredging Co. v. Miller*, 510 U.S. 443, 447, 114 S. Ct. 981,

985 (1994) (citing *Jensen,* 244 U.S. at 216, 37 S. Ct. at 529). We conclude that the

principle that each party bear its own attorneys' fees is a characteristic feature of

maritime law, and so we do not reach the question of proper harmony and

uniformity.

---

[16]The application of this rule has not been completely clear and consistent. "It would be idle to pretend that the line separating permissible from impermissible state regulation is readily discernible in our admiralty jurisprudence, or indeed is even entirely consistent within our admiralty jurisprudence." *Am. Dredging Co. v. Miller*, 510 U.S. 443, 452, 114 S. Ct. 981, 987 (1994) (Scalia, J.). The Supreme Court has incorporated various types of state law into the body of substantive maritime law, under varying justifications. *See, e.g., Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 215–16, 116 S. Ct. 619, 628 (1996) (state wrongful death statute); *Am. Dredging*, 510 U.S. at 450–53, 114 S. Ct. at 986–88 (state *forum non conveniens* rule); *Askew v. Am. Waterways Operators, Inc.*, 411 U.S. 325, 327–29, 93 S. Ct. 1590, 1593–94 (1973) (state law regulating oil spills and oil handling in state territorial waters); *Wilburn Boat*, 348 U.S. at 312 & nn. 2–3, 75 S. Ct. at 369 & nn. 2–3 (state law regarding marine insurance contracts); *Standard Dredging Corp. v. Murphy*, 319 U.S. 306, 307, 63 S. Ct. 1067, 1067–68 (1943) (state unemployment insurance tax applied to workers on a dredge).

D.      *The American Rule is a Characteristic Feature of Substantive Maritime Law*

The principle that each party should bear its own attorneys' fees, the

American Rule,[17] has become firmly entrenched and consistently adhered to in

American federal legal practice.[18]  Norfolk argues, as some courts have ruled, that

the rule that each party bear its own attorneys' fees is not a characteristic feature of

maritime law, but is rather only a general federal procedural rule.[19] Essentially,

Norfolk acknowledges that the American Rule is the default rule of substantive

maritime law, but argues that it does not rise to the level of a characteristic feature

of maritime law.  Thus, according to the analysis in *Jensen,* 244 U.S. at 216, 37 S.

---

[17]The idea that each party should bear its own attorneys' fees is referred to as the American Rule in contrast to the English standard wherein the prevailing party is awarded attorneys' fees.  *See Panola Land Buying Ass'n v. Clark*, 844 F.2d 1506, 1511 n.16 (11th Cir. 1988) (citation omitted).

[18]*See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 271, 95 S. Ct. 1612, 1628 (1975) (the rule that each side pay its own attorneys' fees is "deeply rooted in our history and in congressional policy"); *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717, 87 S. Ct. 1404, 1407 (1967) ("The rule here has long been that attorney's fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor."); *Oelrichs v. Spain*, 82 U.S. (15 Wall.) 211, 231 (1872) (the principle of precluding the shifting of attorneys' fees "rests on a solid foundation" and the shifting of attorneys' fees is "forbidden by the analogies of the law and sound public policy").

[19]In *Hughes v. Foster Wheeler Co.*, 932 P.2d 784, 791 (Alaska 1997), the Supreme Court of Alaska incorporated an Alaskan law providing for the recovery of attorneys' fees into substantive maritime law.  The court found that the preclusion of attorneys' fees is a rule of general federal procedure (i.e., the American Rule), not a characteristic of maritime law.  *Id.* at 789; *see also* David W. Robertson, *Court-Awarded Attorneys' Fees in Maritime Cases: The "American Rule" in Admiralty,* 27 J. Mar. L. & Com. 507, 563–66 (1996) (putting forth the argument that courts have mistaken the American Rule for a substantive maritime rule when it is actually a general federal procedural rule).

14

Ct. at 529, and *Am. Dredging*, 510 U.S. at 447, 114 S. Ct. at 985, the default American Rule must give way to the GPPA (provided the GPPA does not contravene the uniformity interests of maritime law).

In *American Dredging* the Court found that *forum non conveniens* was not a characteristic feature of maritime law because it "neither originated in admiralty nor has exclusive application there. To the contrary, it is and has long been a doctrine of general application." 510 U.S. at 450, 114 S. Ct. at 987 (holding that a Louisiana *forum non conveniens* rule could be used in a case that was applying substantive maritime law). Similarly, the American Rule did not originate in maritime law, it does not have exclusive application in maritime law, and it is a doctrine of general application in federal law.

The GPPA is distinguishable from the Supreme Court's holding in *American Dredging*. First, the GPPA is a substantive law as opposed to *forum non conveniens*, which is a procedural rule. Second, in *American Dredging* there was not a firmly established principle regarding *forum non conveniens* in maritime cases. In contrast, it has long been an established rule in maritime law that each party generally bears the costs of its own attorneys' fees.[20]

---

[20]*See supra* Section III.B.; *see also Arcambel v. Wiseman*, 3 U.S. (3 Dall.) 306, 306 (1796); *The Baltimore*, 75 U.S. (8 Wall.) 377, 392 (1869); *Golden Pisces, Inc. v. Fred Wahl Marine Constr., Inc.*, 495 F.3d 1078, 1081 (9th Cir. 2007); *Texas A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 405–06 (5th Cir. 2003); *Southworth Machinery Co., Inc. v.*

We hold that the consistent and continued application of the American Rule to maritime disputes has established the American Rule as a characteristic feature of substantive maritime law. Although we recognize the position of those who argue that the American Rule is not a characteristic feature of maritime law, the long developed precedent of this Circuit and others cannot be so easily set aside. Therefore, the GPPA's entitlement to attorneys' fees is in direct conflict with this principle of substantive maritime law. Thus, the GPPA cannot be incorporated into substantive maritime law.

## IV. CONCLUSION

We find that the dredging contract between Norfolk and Misener is governed by substantive maritime law. Further, the rule that each party bear its own attorneys' fees is a characteristic feature of substantive maritime law. Norfolk freely drafted the contract but chose not to contract out of this general rule. We will not allow Norfolk to alter the terms of its contract through the retroactive injection of a state law that contravenes a principle of substantive maritime law. We affirm the order of the district court denying Norfolk's request for attorneys' fees.

---

*F/V Corey Pride*, 994 F.2d 37, 41–42 (1st Cir. 1993); *Sosebee v. Rath*, 893 F.2d 54, 56–57 (3rd Cir. 1990); *Kalmbach, Inc. v. Ins. Co. of the State of Pa., Inc.*, 422 F.Supp. 44, 46 (D. Alaska 1976); *Crispin Co. v. M/V Korea*, 251 F.Supp. 878, 879 (S.D. Texas 1965).

16

**AFFIRMED**.

BLACK, Circuit Judge, specially concurring:

While I concur in the result, I write separately because I would analyze differently the issue of whether the GPPA can supplement admiralty law. I would hold application of the GPPA would disrupt the proper harmony and uniformity of admiralty law, and thus I would not reach the issue of whether the American Rule is a characteristic feature of admiralty law.

In *American Dredging*, the Court found a state law rejecting *forum non conveniens* did not disrupt the uniformity of maritime law because the doctrine "is procedural rather than substantive, and it is most unlikely to produce uniform results." 510 U.S. at 453, 114 S. Ct. at 988. The *American Dredging* Court also found *forum non conveniens* would not disrupt the uniformity of admiralty law because it would have little effect on parties' conduct both inside and outside the courtroom. *Id.* at 454-55, 114 S. Ct. at 988-89.[1]

Unlike *forum non conveniens*, the American Rule is a substantive law that yields consistent and predictable results.[2] Moreover, attorneys' fees can be a

---

[1] The Court in *American Dredging* states the uniformity analysis is not limited to the state law's impact on maritime commerce. *Id.* at 453 n.3, 114 S. Ct. at 988 n.3. As the Court indicates, however, the Supreme Court's uniformity analysis has not been entirely clear or consistent. *See id.* at 452, 114 S. Ct. at 987.

[2] Norfolk argues the exceptions to the American Rule demonstrate that maritime law already tolerates a lack of uniformity in the provision of attorneys' fees. These exceptions, however, are consistently applied on a national level. The American Rule thus yields consistent and predictable results despite its limited exceptions.

18

substantial portion of a party's recovery and thus could influence secondary behavior, such as a decision of where to sue. Other courts that have considered the application of state statutes providing for attorneys' fees in maritime cases have also concluded uniformity is an important interest. *See Sosebee v. Rath*, 893 F.2d 54, 56-57 (3d Cir. 1990); *Texas A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 406 (5th Cir. 2003); *Garan, Inc. v. M/V Aivik*, 907 F.Supp. 397, 401 (S.D. Fla. 1995). Although I concur the GPPA cannot supplement admiralty law in this case, I would conclude its application would disrupt the proper harmony and uniformity of admiralty law.