[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-12947
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 23, 2012
JOHN LEY
CLERK

D.C. Docket No. 2:09-cv-00329-SPC

RELIABLE SALVAGE AND TOWING, INC.,

Plaintiff-Appellee,

versus

MICHAEL BIVONA,
*in personam*,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 23, 2012)

Before BARKETT, PRYOR and JORDAN, Circuit Judges.

PER CURIAM:

# I

On Easter Sunday, March 21, 2008, Michael Bivona, ran his vessel—a 35-foot Sea Ray—into a shoal in Gasparilla Pass near Boca Grande, Florida. The incident left the Sea Ray listing 30 degrees in 10 inches of water. Although the weather at the time was calm, a cold front and associated storm were expected that evening or the next day, and the high tide in the area would not bring sufficient amounts of water to float the Sea Ray free for several days. After being summoned by Mr. Bivona, Reliable Salvage and Towing, Inc. successfully towed the Sea Ray from the shoal into deeper water with the use of several vessels.

Reliable sent an invoice to Mr. Bivona's insurer in the amount of $7,523.10 for the salvage operation, but the insurer did not pay the invoice because the insurance policy had lapsed. Reliable then asked Mr. Bivona to pay the invoice. Mr. Bivona, however, maintained that the insurer's denial must have been a mistake. But even after he was unsuccessful in getting the insurer to cover the salvage by Reliable, Mr. Bivona did not make any payment to Reliable.

Invoking admiralty jurisdiction, Reliable filed a complaint in May of 2009 against Mr. Bivona *in personam* and the Sea Ray *in rem*, asserting a claim for salvage (based on contract salvage and pure salvage theories) and for a maritime lien.[1] A

---

[1] The resolution of the *in rem* claim against the Sea Ray is not at issue in this appeal.

salvage claim may be based on either a contract or on the theory of pure salvage. In order to establish a claim for pure salvage, "a salvor must establish three elements:" a "marine peril;" "service voluntarily rendered when not required as an existing duty or from a special contract;" and "success in whole or in part, or ... service ... contribut[ing] to such success." *Flagship Marine Servs. v. Belcher Towing*, 966 F.2d 602, 605 (11th Cir. 1992) (quoting *The Sabine*, 101 U.S. 384, 384 (1879)).

After a bench trial, the district court concluded that the Reliable salvage contract signed by Mr. Bivona was not enforceable because it was missing essential terms, including the actual rate and costs of the salvage operation. The district court, however, found in favor of Reliable on a pure salvage theory and ordered Mr. Bivona to pay $14,000 for the towing of the Sea Ray. The district court also granted Reliable's motion for attorney's fees ($35,592.50) and costs ($991.33), finding that Mr. Bivona's defense on the salvage claim was frivolous and in bad faith.

Mr. Bivona now appeals the award of attorney's fees and costs. Because we find no abuse of discretion, *see Compania Galeana, S.A. v. M/V Caribbean Mara*, 565 F.2d 358, 360 (5th Cir. 1978) (reviewing denial of attorney's fees and costs in admiralty case for abuse of discretion), we affirm.

II

The general rule in admiralty is that, absent a governing statute or applicable

3

contractual provision, each party (including a prevailing party) will bear its own attorney's fees and costs. *See, e.g., Misener Marine Construction, Inc. v. Norfolk Dredging Co.,* 594 F.3d 832, 838 (11th Cir. 2010). But this general rule, like most, is subject to some exceptions. One exception is that attorney's fees and costs may be awarded against a party who "acted in bad faith in the course of the litigation." *See id.* (internal quotation marks and citations omitted). *See also Offshore Marine Towing, Inc. v. MR23*, 412 F.3d 1254, 1256 (11th Cir. 2005) ("Attorney's fees have been awarded [in admiralty actions] when the losing party has acted in bad faith or vexatiously."). For example, in *Vaughan v. Atkinson,* 369 U.S. 527, 530-31 (1962), the Supreme Court held that an injured seaman who had been denied maintenance and cure for a number of years could recover attorney's fees and costs (described as a species of damages) as a matter of equity under admiralty law because the employer/ship owner had not conducted an investigation and had refused to admit or deny the claim prior to trial, thereby forcing the seaman to hire counsel and file a lawsuit.

## A

Mr. Bivona, in an attempt to demonstrate that he litigated in good faith, points to the district court's finding that there was no valid contract for salvage. But the existence of a valid defense to one of Reliable's theories does not mean that Mr.

Bivona's defense to the pure salvage claim could not be found to be frivolous. *Cf. Reed v. The Great Lakes Companies, Inc.*, 330 F.3d 931, 936 (7th Cir. 2003) ("The fact that Reed's accommodation claim ... was not frivolous would be no bar to imposing sanctions for putting his opponent to the expense of opposing a frivolous claim (or defense) just because he had a nonfrivolous claim as well.").

In addition, Mr. Bivona asserts that the unliquidated value of a "pure salvage" award could only be determined by the district court after consideration of many factors. As Mr. Bivona puts it, "[r]equiring Reliable to meet its burden of proof at trial on its claim for pure salvage is not evidence of bad faith or inequitable conduct." On this record, and given the applicable standard of review, we disagree.

In opening statement and in closing argument, Mr. Bivona asserted that the Sea Ray was not in peril because the vessel was not taking on water and there was no inclement weather. As a result, he argued, Reliable failed to satisfy one of the elements of its pure salvage claim. *See* R2 at 472-73, 662. This argument, however, was not well-founded given the weather conditions the Sea Ray would be facing for several days had it not been assisted by Reliable. *See, e.g.*, *The Leonie O. Louise*, 4 F.2d 699, 700 (5th Cir. 1925) (230-ton vessel which went aground on a river bank due to a storm, with five feet of water under its stern at low tide, was in peril, so that salvage award was proper: "Although the danger was not imminent, it was reasonably

5

to be apprehended, and there was a pressing necessity for prompt action to return the [vessel] to the water."); *Fort Myers Shell & Dredging Co. v. Barge NBC512*, 404 F.2d 137, 139 (5th Cir. 1968) (refusing to hold, as a matter of law, that barges which had run aground on beaches in the Gulf of Mexico were not in peril for purposes of salvage claim, as there were pilings nearby and there were sudden storms in the Gulf at all times of the year). Moreover, when he testified, Mr. Bivona conceded that Reliable Salvage had performed a "service and ... should be entitled to payment." R2 at 564. He also acknowledged that his insurer had not made any payment in the three years since the incident, and that if his insurance claim failed, "it is my obligation." *See* R2 at 565. *See also* R2 at 646. Finally, he said that it should have taken him only six to eight weeks following the insurer's denial of the claim to get together with Reliable and make some type of arrangement for payment. *See* R2 at 648.[2]

We also note that this is not a case where a vessel owner refused to pay the exorbitant and unjustified demand of a salvor and was forced to go to trial. Mr. Bivona never argued that the sum billed by Reliable was excessive, and the district court ended up awarding Reliable more than the amount invoiced.

B

---

[2] Mr. Bivona testified that he had made several offers to Reliable, but those offers were all rejected. *See* R2 at 648-49. As far as we can tell, there is no evidence in the trial record about the substance of those offers.

Mr. Bivona relies on *Galveston County Navigation District No. 1 v. Hopson Towing Co., Inc.*, 92 F.3d 353 (5th Cir. 1996), but that case does not support his position. In *Galveston County*, a lawsuit ensued after a barge being pushed by the defendants' tug boat allided with a drawbridge owned by the plaintiff. *See id.* at 354. Although the parties agreed to the amount of damage to the bridge, they could not agree on the apportionment of fault. *See id.* Following a bench trial, the district court entered judgment for the plaintiff and ordered the defendants to pay the plaintiff's attorney's fees because they did not act in an "equitable manner" by failing to pay for damages that the tug boat had caused and that the defendants had agreed were reasonable. The Fifth Circuit reversed the district court's award of attorney's fees, holding that the failure to act in an "equitable manner" does not support an award of attorney's fees and that the defendants' defense—*i.e.*, that the plaintiff's failure to timely open the bridge wholly or partially contributed to the allision—was "legally reasonable" and supported with evidence at trial. As a result, the defense was not frivolous or asserted in bad faith. *Id.* at 360.

In contrast, Mr. Bivona conceded Reliable was owed a salvage fee for its services and never argued that the amount originally billed by Reliable was unreasonable. He also failed to pay Reliable when his insurer denied the claim, though he recognized it was then his obligation to do so.

## III

The abuse of discretion standard "recognizes there is a range of choice within which we will not reverse the district court even if we might have reached a different decision." *Forsyth County v. U.S. Army Corps of Engineers*, 633 F.3d 1032, 1039 (11th Cir. 2011) (internal quotation marks and citation omitted). Under this standard, no reversible error has been shown, and the district court's rulings and judgment are therefore affirmed.

**AFFIRMED.**